**SPEAKER SORTATION SYSTEMS, DIVISION OF A–T–O, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE,**
**Defendant-Appellee.**

**No. 77–1140.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1977.
Decided Jan. 6, 1978.

James M. McHale, Robert H. Turtle, vom Baur, Coburn, Simmons & Turtle, Washington, D. C., W. Stuart Parsons, Milwaukee, Wis., for plaintiff-appellant.

William J. Mulligan, U. S. Atty., John A. Nelson, Asst. U. S. Atty., Milwaukee, Wis., for defendant-appellee.

\* Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

1. Speaker also asserted it was entitled to recover on other legal theories for the labor and

Before SWYGERT and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.\*

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiff-Appellant Speaker Sortation Systems, Division of A–T–O, Inc. (Speaker) furnished labor and materials in connection with the installation of bulk mail sorting equipment at the Post Office in Milwaukee, Wisconsin, under the terms of a subcontract. Speaker instituted this action against the United States Postal Service (Service) demanding judgment on an equitable lien theory in the amount of $94,-220.61 for work performed on and materials supplied to that facility for Service's use.[1] Central to the viability of Speaker's theory was the existence of a fund in the possession of Service to which the equitable lien could attach.

Kennedy Electric Co., Inc., another subcontractor involved in the same project, instituted an action against Service in the United States District Court for the District of Colorado to enforce an equitable lien for its work performed on and materials supplied to the Milwaukee Post Office. That court found that a fund existed to which Kennedy Electric Co., Inc.'s equitable lien could attach, and entered judgment for the subcontractor. *Kennedy Electric Co., Inc. v. United States Postal Service*, 367 F.Supp. 828 (D.Colo.1973), *aff'd.*, 508 F.2d 954 (10th Cir. 1974).

Contrary to the *Kennedy* court's finding, the district court in the instant case found that since Service owed no money to the general contractor, there was no fund to which Speaker's claimed equitable lien could attach. This appeal requires us to determine whether defendant Service was collaterally estopped from relitigating the issue of the existence of the fund to which Speaker sought to attach its asserted equi-

materials it supplied under the terms of the subcontract. In view of our decision, a review of the district court's dismissal of those other claims is not required.

table lien. We hold that Service was collaterally estopped on this issue, and reverse the district court's order granting summary judgment in favor of Service.

The facts are undisputed. In late 1969, J. C. Corrigan Co., Inc. entered into a contract with the United States Postoffice Department, Service's predecessor.[2] J. C. Corrigan Co., Inc. subcontracted substantially all of the work under the contract to its affiliate, Corrigan Construction Co. (both Corrigan Companies will be referred to hereafter as "Corrigan"). Corrigan thereafter subcontracted major portions of the contract work. Among the Corrigan subcontractors were Speaker and Kennedy Electric Co., Inc. Speaker successfully completed the installation of the equipment under the terms of its subcontract with Corrigan.

It is further undisputed that Corrigan never obtained performance and payment bonds as required both by the Miller Act [40 U.S.C. § 270a et seq.][3] and the terms of the contract itself. Although the contract and applicable regulations limited progress payments to Corrigan to 70% of the cost incurred with a maximum of 70% of the contract price, Service made progress payments to Corrigan amounting to nearly 90% of the contract price. Specifically, in February and March, 1971, Service made payments to Corrigan's assignee of $14,500.00 and $190,747.00, respectively. Service made these payments without the required invoices, without official approval of unusual progress payments as required by 41 C.F.R. § 30.505, and without assurances that the unpaid balance of the contract price was sufficient to cover the cost of completion, as required by 41 C.F.R. § 30.521.1.

On the basis of these same uncontested facts, the *Kennedy* court found that the improper progress payments of March, 1971 ($190,747.00) and the actual retainage of the obligated appropriation under the contract ($35,739.47) provided a fund in Service's possession out of which the subcontractor Kennedy's claim for an equitable lien for labor and material furnished could be satisfied. *Kennedy, supra*, 367 F.Supp. at 841. The *Kennedy* court entered judgment for the subcontractor in the amount of $61,281.31 plus interest.[4]

It is clear that Service had a full and fair opportunity to litigate the existence of this fund in the *Kennedy* court. Having had such an opportunity, and having utilized that opportunity to litigate the issue of the existence of the fund, we believe that relitigation on the identical issue of the existence of the same fund should have been precluded in the instant case.

▆ Invocation of the doctrine of collateral estoppel, or issue preclusion, is proper when the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Butler v. Stover Bros. Trucking Company*, 546 F.2d 544, 551 (7th Cir. 1977); *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir. 1976); *Garcy Corporation v. Home Insurance Company*, 496 F.2d 479, 483 (7th Cir. 1974); *Federal Savings and Loan Insurance Corp. v. Hogan*, 476 F.2d 1182, 1187–88 (7th Cir. 1973); Cf. *Dreyfus v. First National Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970). That Speaker was not a party to the

---

2. On July 1, 1971, Service succeeded to all the rights and liabilities of the United States Postoffice Department. 39 U.S.C. § 2002(a)(2).

3. In pertinent part, 40 U.S.C. § 270a provides:
   (a) Before any contract . . . for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds . . . :
   (1). A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall

deem adequate, for the protection of the United States.
   (2). A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. . . .

4. The fund created by the *Kennedy* court from actual amounts retained and those amounts which should have been retained thus has a sufficient amount to satisfy the equitable lien claim of Speaker even after satisfaction of Kennedy's claim.

prior *Kennedy* litigation is of no importance, for the *doctrine of mutuality of estoppel* in such situations has been minimized in favor of a more significant determination of "whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate . . . ." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); see *Restatement (Second) of Judgments*, Appendix § 88, comment *b*, at 162–163 (Tent. Draft No. 3, 1976).

Nor do we find any special circumstances in the present case by reason of which Service should be given the opportunity to litigate for a second time the existence of a fund composed of monies actually retained and which should have been retained in the administration of the contract to install the bulk mail facility at the Milwaukee Post Office. Contending that two special circumstances do exist in this case which should preclude the application of the doctrine of collateral estoppel against it, Service points to the following provision of the *Restatement (Second) of Judgments*, *supra*, Appendix § 88:

"A party precluded from relitigating an issue with an opposing party, in accordance with §§ 68 and 68.1 is also precluded from doing so with another person unless the fact that he lacked full and fair opportunities to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in § 68.1 and also whether:

(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based.

(8) Other compelling circumstances that make it appropriate that the party be permitted to relitigate the issue."

On the basis of (7), Service argues that the *Kennedy* court's determination of the existence of the fund was a determination of an issue of law, and thus collateral estoppel should be inapplicable in this case. It is not entirely clear how the *Kennedy* courts viewed the issue, for its characterization as legal or factual was of no importance. On the one hand, it appears that the determination was a factual determination [See *Kennedy, supra*, 367 F.Supp. at 841; 508 F.2d at 958], but on the other hand the *Kennedy* courts employed a fiction with respect to the funds which Service should have retained, and that fiction served as both a factual and legal predicate upon which *Kennedy's* successful equitable lien theory rested.

■ We deem it unnecessary to characterize the determination of the existence of the fund as a determination of an issue of fact, or of law, or of a combination of the two. Regardless of its characterization, the issue of the fund's existence was actually litigated and determined, and that determination was essential to the judgment of the *Kennedy* courts. The claim in *Kennedy* and the claim in this case arose from the same "administrative oversight" in the performance of the contract by Service. Both claims stem from the same controversy, and we find it unwise to allow repeated litigation involving the same issue, even if it may be characterized as an issue of law. See *Restatement (Second) of Judgments*, § 68.1, Comment *b* (Tent.Draft No. 4, 1977).

■ In connection with the "other compelling circumstances" contention advanced by Service in reliance on (8) of § 88 of the *Restatement*, the defendant argues that the *Kennedy* decision is "plainly wrong." Service asserts that the authority relied upon by both the Colorado district court and the Tenth Circuit do not support the holding that Service should have withheld certain progress payments to Corrigan, that Service was not entitled to liquidated damages, and that thereby a fund was created to which the claimed equitable lien could attach. We stand unpersuaded by the Service's attack on the reasoning of the *Kennedy* decisions, and cannot say that those decisions are plainly wrong. Nor, we can add, do we find any peculiar circumstances in this case such

that the application of the doctrine of collateral estoppel will work an injustice on a party. See *Butler v. Stover Bros. Trucking Company, supra,* 546 F.2d 544.

Accordingly, the order of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.