## In re TRANSOCEAN TENDER OFFER SECURITIES LITIGATION.*

### MDL No. 223.

United States District Court,
N. D. Illinois, E. D.

Aug. 7, 1978.

---

* 74 C 2985—*McNally, et al. v. Esmark, Inc., et al.*

  76 C 2208—*College Retirement Equities Fund, et al. v. Esmark, Inc., et al.*

76 C 2254—*Norman, et al. v. Vickers Energy Corp., et al.*

Sheldon Oliensis, Allan M. Pepper, Steven J. Glassman, Edward A. Friedman, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs in New York Action.

Louis R. Koerner, Jr., Koerner & Lambert, New Orleans, La., for plaintiffs in Louisiana Action.

Alex Elson, Willard J. Lassers, Aaron S. Wolff, Elson, Lassers & Wolff, Arthur T. Susman, Arnold M. Flamm, Richard H. Prins, Flamm & Susman, Ltd., Chicago, Ill., for plaintiffs in Chicago Action.

Susan Getzendanner, Lead Counsel for defendants, Mayer, Brown & Platt, Chicago, Ill., for defendants Esmark, Vickers Energy Corporation and certain individual defendants.

Alan Schulman, Vinson & Elkins, Houston, Tex., for defendant TransOcean and certain individual defendants.

William K. Wilde, Bracewell & Patterson, Houston, Tex., for certain individual defendants.

John F. Cusack, Cusack & Cusack, Chicago, Ill., of counsel for certain individual defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on plaintiffs' motions for summary judgment on the issue of liability. For the reasons hereinafter stated, the motions will be granted in part and stricken in part.

## BACKGROUND

The motions before the court concern the preclusive effect to be given to a decision of the Delaware Supreme Court under principles of collateral estoppel on the issue of liability. Before addressing the motions, however, a review of the procedural history of this litigation is in order.

This litigation arises out of a tender offer made by Vickers Energy Corporation [hereinafter Vickers], a wholly-owned subsidiary of Esmark, Inc. [hereinafter Esmark], for the minority shares of TransOcean Oil, Inc. [hereinafter TransOcean]. At the time of the tender offer, Vickers was the majority shareholder of TransOcean. While the tender offer was in progress, various minority shareholders of TransOcean commenced three actions, each in a different federal district: 74 C 2985, *McNally, et al. v. Esmark, Inc., et al.,* in the Northern District of Illinois [hereinafter the Illinois action or Illinois plaintiffs], 76 C 2208, *College Retirement Equities Fund, et al. v. Esmark, Inc., et al.,* in the Southern District of New York [hereinafter the New York action or New York plaintiffs], and 76 C 2254, *Nor-*

*man, et al. v. Vickers Energy Corp., et al.,* in the Eastern District of Louisiana [hereinafter the Louisiana action or Louisiana plaintiffs].

The principal defendants in these actions are TransOcean, Vickers, and Esmark, along with certain directors and officers of each of these corporations, named both individually and in their corporate capacities. Each action alleges that the defendants violated various federal securities laws[1] because of false and misleading representations and omissions of material fact in the tender offer circular. Each action further alleges that defendants breached common law fiduciary duties owed to the minority shareholders in connection with the tender offer. One of the counts in the Illinois action is brought derivatively on behalf of TransOcean and charges that certain transactions, unrelated to the tender offer, between TransOcean and affiliates of Esmark were unfair to TransOcean.[2] The jurisdiction of this court is undisputed.

Both the Illinois and Louisiana actions are proceeding as class actions on behalf of TransOcean minority shareholders, including those who tendered TransOcean stock to Vickers pursuant to the tender offer. The New York plaintiffs have opted out of both classes.

In May of 1976, the Judicial Panel on Multidistrict Litigation ordered the Louisiana and New York cases transferred to the Northern District of Illinois for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re TransOcean Tender Offer Securities Litigation,* 415 F.Supp. 382 (Jud.Pan.Mult.Lit.1976).

In addition to the three federal actions, a fourth action arising out of the Vickers' tender offer was commenced in Delaware state court against Vickers, Esmark, and the members of TransOcean's board of directors. This action was likewise established as a class action on behalf of minority shareholders of TransOcean. Plaintiffs in New York, as well as some 187 out of approximately 7,200 class members in the Illinois action and a handful in the Louisiana action, opted out of the class. The Delaware complaint included claims under common law principles relating to fiduciary duties allegedly owed by defendants to TransOcean's minority shareholders and fraud based on alleged misrepresentations and omissions of material facts in the tender offer circular.

On January 22, 1976, the Delaware Court of Chancery rendered an opinion in defendants' favor. *Lynch v. Vickers Energy Corp.,* 351 A.2d 570 (Del.Ch.1976). Judgment was entered on February 26, 1976.

On March 4, 1976, defendants moved for summary judgment in the Illinois action against the Illinois plaintiffs. Defendants contended that under principles of res judicata and collateral estoppel the judgment in *Lynch v. Vickers Energy Corp., supra,* precluded relitigation of the Illinois plaintiffs' state and federal claims.

On January 24, 1977, this court granted in part, denied in part, and struck in part defendants' motion for summary judgment. *In re TransOcean Tender Offer Securities Litigation,* 427 F.Supp. 1211 (N.D.Ill.1977) [hereinafter *TransOcean* ]. Among other things, the court determined that all plaintiffs in the Illinois action who were members of the Delaware class were precluded under principles of res judicata and collateral estoppel from pursuing their state law

---

1. Illinois plaintiffs' federal securities claims are brought under Sections 14(d) and (e) of the Securities Exchange Act of 1934 [hereinafter the 1934 Act], 15 U.S.C. §§ 78n(d) and 78n(e). New York plaintiffs' federal securities claims are brought under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j, Rule 10b–5 promulgated thereunder, and Section 14(e) of the 1934 Act. Louisiana plaintiffs' federal securities claims are brought, *inter alia,* under Sections 12 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*

and 77q, and Sections 9(a), 9(e), 10(b), 14(d), 14(e), and 18 of the 1934 Act, 15 U.S.C. §§ 78i(a), 78i(e), 78j(b), 78n(d), 78n(e), and 78r.

2. In paragraphs 27–32 of their complaint, Louisiana plaintiffs alleged that defendants violated the antitrust laws in addition to the securities laws. These allegations were dismissed for failure to state a claim. *In re TransOcean Tender Offer Securities Litigation,* 427 F.Supp. 1208 (N.D.Ill.1977).

claims and their federal securities law claims under Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e).

On October 18, 1977, the Delaware Supreme Court unanimously reversed the decision of the Delaware Chancery Court. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del.Sup., 1977) [hereinafter *Lynch*]. The Delaware Supreme Court held as a matter of law on the undisputed facts that defendants had violated their fiduciary duty of candor to the TransOcean minority shareholders. The cause was remanded to the trial court for a determination of damages.

The Illinois, Louisiana, and New York plaintiffs, on October 20, 1977, February 27, 1978, and May 23, 1978,[3] respectively moved for summary judgment on liability only, based on the Delaware Supreme Court's decision in *Lynch* and principles of res judicata and collateral estoppel.

On November 7, 1977, defendants filed motions for reargument before the Delaware Supreme Court. On February 3, 1978, the Delaware Supreme Court denied such motions. It also slightly revised its opinion of October 18, 1977.

At a hearing held by this court on February 27, 1978, this court vacated its order of January 24, 1977, which had granted a substantial portion of defendants' motion for summary judgment. On defendants' concession, the court entered partial summary judgment as to liability on the state-based claims against Esmark and Vickers in favor of those plaintiffs in the Illinois and Louisiana actions who are members of the Delaware class. The court also set a briefing schedule with respect to the unresolved issues raised by the plaintiffs' motions for summary judgment.[4] The Louisiana plaintiffs have adopted the briefs filed by the Illinois and New York plaintiffs. The motions having been extensively briefed by the parties, they are now ripe for decision.

## THE MOTIONS

As indicated, the parties have already agreed that, under principles of res judicata, the Delaware Supreme Court's decision in *Lynch* precludes relitigation of the state law claims against Vickers and Esmark asserted by those plaintiffs who are members of the Delaware class. Pursuant to the agreement of Vickers and Esmark, partial summary judgment was entered in plaintiffs' favor on such claims. The parties, however, disagree as to the preclusive effect of *Lynch* on the remaining claims and parties. This disagreement raises the following four issues, each of which will be discussed separately:

3. New York plaintiffs' motion for summary judgment was made *nunc pro tunc* as of February 27, 1978.

4. A formal order reflecting what transpired at the hearing was entered and it provides in relevant part as follows:

This matter coming on to be heard for pre-trial and the parties having submitted a letter to the Court dated February 20, 1978 setting forth certain areas of agreement and disagreement, and the Court being further advised in open court,

NOW, THEREFORE, IT IS ORDERED:

1. The order of Court dated January 24, 1977, insofar as it granted in part defendants' motion for summary judgment on Counts I and III in the Illinois action (*McNally v. Esmark, Inc.*, No. 74 C 2985), be and is hereby vacated. . . .

4. Judgment of liability be and the same is hereby entered against defendants Esmark, Inc. and Vickers Energy Corporation in favor of those members of the plaintiff-class in the Illinois action (*McNally v. Esmark, Inc.*, No. 74 C 2985) who are also members of the plaintiff-class in the Delaware action (*Lynch v. Vickers Energy Corp.*, No. 4645) now pending in the Court of Chancery of the State of Delaware in and for New Castle County, with respect to the state-based claims set forth in Count III of the Illinois action . . . .

5. Judgment of liability be and the same is hereby entered against defendants Esmark, Inc. and Vickers Energy Corporation in favor of those members of the plaintiff-class in the Louisiana action (*Norman v. Vickers Energy Corp.*, No. 76 C 2254), who are also members of the plaintiff-class in the Delaware action (*Lynch v. Vickers Energy Corp.*, No. 4645) now pending in the Court of Chancery of the State of Delaware in and for New Castle County, with respect to the state-based claims set forth in paragraphs 33–34 of the Louisiana action. . . .

I. Under principles of collateral estoppel, may the plaintiffs who opted out of the Delaware class claim the benefit of the judgment won by that class?

II. Are all plaintiffs entitled to summary judgment on their federal claims?

III. Are plaintiffs entitled to summary judgment against any of the individual defendants or TransOcean?

IV. Are Illinois plaintiffs entitled to summary judgment on the derivative claim in count III?

**I. *Under Principles of Collateral Estoppel, May the Plaintiffs Who Opted Out of the Delaware Class Claim the Benefit of the Judgment Won by that Class?***

Defendants submit that the plaintiffs whc opted out of the Delaware class cannot claim the benefit of the judgment won by that class in order to avoid the necessity of litigating their state or federal law claims. Defendants state that whether the opt outs can claim the benefit of the judgment "turns on whether the rule requiring mutuality of estoppel applies in the particular circumstances of this case." (Memorandum of Defendants in Opposition to Plaintiffs' Motions for Summary Judgment at 3). Defendants discuss the mutuality rule[5] and concede that it has "generally been discarded in the case of a 'defensive' use of a prior judgment." (*Id.*) They submit, however, that "courts have been less willing to permit 'offensive' use of the prior judgment to estop a defendant from litigating an issue on which he had lost in a prior action with a different plaintiff." (*Id.* at 4).

Plaintiffs contend that the distinction between "offensive" and "defensive" use of collateral estoppel has been obliterated.

They state that courts in this circuit and others have upheld the offensive use of collateral estoppel. Plaintiffs maintain that the focus of the cases today is on one salient question: whether the litigant against whom collateral estoppel is sought to be enforced had a full and fair opportunity to litigate the issue in the first action.

*Legal Standards—Federal Claims*

A review of the recent decisions of the Court of Appeals for the Seventh Circuit indicates that it wholeheartedly endorses the offensive use of collateral estoppel.[6] For example, in *Speaker Sortation Systems v. United States Postal Service*, 568 F.2d 46, 48–49 (7th Cir. 1978), the Court of Appeals rejected the mutuality test and stated:

Invocation of the doctrine of collateral estoppel, or issue preclusion, is proper when the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. . . . That Speaker [plaintiff] was not a party to the prior . . . litigation is of *no importance*, for the doctrine of mutuality of estoppel in such situations has been minimized in favor of *a more significant determination of 'whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate . . . .'* [citing *inter alia*, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)] (Emphasis supplied).

Similarly, in *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977), the Court of Appeals ordered the offensive use of collateral estoppel, ruling that the litigants were "entitled, despite the absence of mu-

---

**5.** Under the mutuality rule, a litigant may not benefit from a judgment unless he would have been bound by it had it been adverse. *See, e. g., Bernhard v. Bank of America National Trust & Savings Association*, 19 Cal.2d 807, 122 P.2d 892 (1942).

**6.** The law in this Circuit is similar to the development of the law in other circuits. For example, in *Shore v. Parklane Hosiery Co., Inc.*, 565

F.2d 815 (2d Cir. 1977), *cert. granted*, —— U.S. ——, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978), the Second Circuit enforced the offensive use of collateral estoppel, even though the first action was a nonjury proceeding and the defendant had a right to a jury in the second proceeding. In so ruling, the Court noted that the mutuality rule is a dead letter.

tuality of estoppel, to assert collateral estoppel, or issue preclusion, as to issues sought to be litigated in the Indiana action, Woodmar having had a full and fair opportunity to litigate those issues in the bankruptcy proceeding."

█ In light of these authorities, the rule of mutuality certainly cannot prevent the offensive use of collateral estoppel as to, at least, plaintiffs' federal claims.

### Legal Standards—State Law Claims

As to plaintiffs' state law claims, defendants contend that this court is obliged to apply the Delaware law of collateral estoppel. Defendants assert that Delaware courts have taken a conservative approach on the question of mutuality of estoppel and that they have not enforced the offensive use of collateral estoppel.

Illinois plaintiffs contend that it is far from clear that defendants are correct in their contention that this court must look to Delaware law in order to ascertain the preclusive effect of a Delaware judgment on a state law issue. Moreover, they note that this court is not necessarily bound by Delaware's interpretation of the doctrine of collateral estoppel. New York plaintiffs submit that even assuming *arguendo* that Delaware collateral estoppel law differs from federal collateral estoppel law, it is in no way controlling on federal courts.[7]

█ The court, however, has already determined that "the Delaware law of preclusion is in accord with general principles of collateral estoppel." *TransOcean, supra* at 1219. Moreover, far from being conservative in its application of collateral estoppel, Delaware has abandoned, in sweeping language, the mutuality rule insofar as the defensive use of collateral estoppel is concerned. *See Foltz v. Pullman, Inc.*, 319 A.2d 38 (Del.Super.1974). It is true that the *Foltz* court did not decide whether collateral estoppel can be used offensively, nevertheless, there is nothing in *Foltz* or other recent Delaware decisions which suggests that it cannot be asserted offensively. At best, there is no controlling law on the issue. Under such circumstances, this court is warranted in " 'choos[ing] the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." *TransOcean, supra* at 1215. This court is of the opinion that there is every indication that the Delaware courts, when called upon to do so, will adopt the rule which prevails in the Seventh Circuit that where a party has had a full and fair opportunity to litigate an issue in one proceeding, that party is barred from relitigating that issue even though there is no mutuality of estoppel. *Speaker Sortation Systems v. United States Postal Service, supra; Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co., supra.*[8]

█ In addition, as plaintiffs correctly note, this court may give the Delaware judgment greater preclusive effect than would the courts of Delaware. *See* Vestal, *Res Judicata/Preclusion by Judgment: The*

---

7. New York plaintiffs offer two theories to support their assertion that Delaware collateral estoppel law is not controlling here. First, they state that "even if the Court were required, under the Full Faith and Credit Clause, to give the state judgment at least the *minimum* preclusive effect which the state court would give, a federal Court remains free to give *greater* preclusive effect than would the courts of the rendering state. . . . Second, as defendants themselves have pointed out in this litigation, where a federal judgment is entered on a state claim, that federal judgment becomes binding on the defendant against whom it is entered under *federal* collateral estoppel principles." (Reply Memorandum of New York Plaintiffs on Motion for Summary Judgment at 13–14). (Emphasis in original).

8. As the Seventh Circuit opinions indicate, whether collateral estoppel should apply does not turn on whether a particular litigant is rewarded by the offensive use of collateral estoppel. The key considerations are whether the party had a full and fair opportunity to litigate an issue in a prior proceeding and whether judicial economy would be served by an application of collateral estoppel. Delaware has likewise recognized as much: "The doctrine of collateral estoppel, like the doctrine of res judicata, is primarily one of public policy and only secondarily concerned with the private benefit or hardship to the individual litigants." *Foltz v. Pullman, Inc., supra* at 42.

*Law Applied in Federal Courts*, 66 Mich.L. Rev. 1723, 1738 (1968). *See also Trans-Ocean, supra* at 1219, "while this court should give great consideration to Delaware's interpretation of collateral estoppel, 'it is not necessarily bound by those interpretations.'" Thus, even if Delaware courts would not permit the offensive use of collateral estoppel, this court would give the Delaware judgment greater preclusive effect than Delaware courts.

■ Accordingly, under principles of collateral estoppel, plaintiffs who excluded themselves from the Delaware class are not prohibited by the rule of mutuality from claiming the benefit of the judgment won by that class with respect to both their state and federal law claims.

### Class Action Rules/One-Way Intervention

Recognizing the force of such cases as *Speaker Sortation Systems v. United States Postal Service, supra*, defendants argue that "simply because offensive use of a prior judgment is permissible in some cases does not mean that it is permissible in every case where mutuality is lacking." (Memorandum of Defendants in Opposition to Plaintiffs' Motions for Summary Judgment at 6). They assert that where, as here, "plaintiffs who opted out of a class attempt to invoke a judgment in favor of the class in order to avoid the necessity of litigating their individual claims," *Id.*, the offensive use of collateral estoppel should not be permitted. Defendants submit that to hold that an opt out plaintiff can offensively use the judgment in favor of the class would be contrary to the policy against one-way intervention which amended Rule 23, Fed.R. Civ.P., was designed to preclude:

> If, as the Supreme Court stated in *American Pipe [& Construction Co. v. Utah*, 414 U.S. 538, 547 [94 S.Ct. 756, 38 L.Ed.2d 713] (1974)], Rule 23 was designed to rem-

edy the unfairness of allowing "members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one," it would hardly be consistent with the Rule's purpose to allow the plaintiffs in this case to insulate themselves from an unfavorable judgment by opting out of the Delaware class but yet to benefit from the judgment won by the class through the use of collateral estoppel. (Memorandum of Defendants in Opposition to Plaintiffs' Motions for Summary Judgment at 9–10).

In addition, defendants assert that they have been unable to find any case in this or any other circuit where class members who opted out have been able to assert collateral estoppel offensively. Moreover, they state that the *Restatement of the Law Second, Judgments* (Tent.Draft No. 2, 1975) [hereinafter *Restatement Second*] and commentators [9] on the class action rules all state unequivocally that such an application of collateral estoppel should be rejected.

New York plaintiffs assert that the class action cases cited by defendants "concededly have nothing to do with collateral estoppel, and defendants, while they seek to mask it in circuitous language, necessarily concede that no case has ever sustained their position that the principles of collateral estoppel are inapplicable to opt-outs." (New York Plaintiffs' Memorandum in Response to Defendants' May 22, 1978 Memorandum at 2). New York plaintiffs note that the class action cases cited by defendants deal with an entirely different issue— the need for early definition of the class to prevent intervention in the class litigation after settlement or judgment. Moreover, they state that these cases have an entirely different rationale than the recent cases applying collateral estoppel offensively.[10]

---

**9.** *See* Note, *Class Action Judgments and Mutuality of Estoppel*, 43 Geo.Wash.L.Rev. 814, 830 (1975); 7A Wright & Miller, *Federal Practice & Procedure* § 1789, at 183 (1972). *See also* Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 391 n.136

(1967), *following* 2 *Barron & Holtzoff*, § 572, at 96–97 (Supp.1966) ("it would be anomalous to give one who opts out collateral estoppel benefits of the action from which he deliberately removed himself.").

**10.** In addition to arguing that defendants' one-way intervention arguments should be decided

■ Defendants' arguments suffer from two major defects. First, defendants are attempting to breathe life back into the defunct mutuality doctrine in a new guise. Second, their arguments are based on the erroneous assumption that the application of collateral estoppel turns on whether or not a particular litigant is rewarded.

As far as this court can determine, there is no precedent for the issue raised here. As for defendants' reliance on numerous commentators, and even the *Restatement Second*,[11] these authorities were written when the doctrine of mutuality had viability and when it was still relevant to consider whether it was fair to give a party the benefit of a favorable judgment when he could not be bound by an unfavorable one. As indicated earlier, the focus on the recent cases in this circuit and others is no longer on mutuality but rather on whether the litigant against whom collateral estoppel is sought to be asserted had a full and fair opportunity to litigate the issue in the first action. If he did not, he will not be bound. If he did, he is bound, notwithstanding that the party benefiting would not be bound by an adverse judgment.[12] The rationale for the rule is to expedite judicial resources where the party seeking to retry issues has already had his day in court. In fact, this court articulated these very principles when it granted a substantial portion of defendants' motion for summary judgment:

> on the merits, both Illinois and New York plaintiffs suggest that the arguments can be laid to rest on the basis of the defendants' previous representations that "if the [Delaware] judgment is adverse to the defendants, they may be collaterally estopped . . . *even if the later action is brought by excluded members.*" (Emphasis added). Defendants state that this was a cautious legal statement made very early in the Delaware litigation at a time when they were concerned about the prejudice to them if the New York plaintiffs were permitted to opt out of the Delaware case. Plaintiffs attack this statement as being a "purported excuse" and note that the statement was quoted by defendants in a memorandum filed with this court well over a year after the Delaware Chancery Court's decision. For whatever reason defendants made the representations, the court is of the opinion that it is the better practice to determine the issues raised by the parties with respect to the mo-

In light of the extreme burden upon the courts, particularly the burden of multiple litigation arising out of the same transaction, the policy of ending litigation is essential. Moreover, the fairness of not requiring parties to relitigate matters once judicially determined is fundamental. *TransOcean, supra* at 1219.

■ The court, of course, agrees with defendants that plaintiffs who elect to exclude themselves cannot get back into the class to participate in the benefits of a successful class action. *See, e. g., Sarasota Oil Co. v. Greyhound Leasing & Financial Corp.*, 483 F.2d 450 (10th Cir. 1973). In the case at bar, however, the opt out plaintiffs are not attempting to get back into a class from which they excluded themselves. Nor have they sat by idly on the sidelines while the class and defendants did battle. Rather, the opt out plaintiffs, in these proceedings, are attempting to prevent the defendants from litigating matters which plaintiffs assert have already been determined. Apart from the mere fact that the plaintiffs are opt outs, the situation here is no different from that in *Speaker Sortation Systems v. United States Postal Service, supra*. In short, defendants' reliance on class action cases and defendants' argument that it would be unfair to permit the opt out plaintiffs to assert the Delaware judgment as collateral estoppel in this litigation

> tions for summary judgment on the merits rather than on the previous representations of the parties.

**11.** *See* § 88 and Comment (e) and § 86(1)(c) and Comment d.

**12.** The party benefitting could not be bound because of due process considerations. *See, e. g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971):

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

are an ill-disguised attempt to resurrect the mutuality doctrine.

It could be argued that permitting opt out plaintiffs to assert collateral estoppel offensively might encourage plaintiffs in future class actions to exclude themselves from the class. Such an argument, however, has several shortcomings. As a practical matter, an extremely small percentage of persons seek exclusion from a class and to be represented by their own counsel. Moreover, few people can afford to bear the cost and burden of opting out and filing their own lawsuits. This is especially so where the individual claims are small. *See In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 732 (N.D.Ill.1977). Even if plaintiffs decide to opt out, file suit, and subsequently attempt to assert a successful class action judgment offensively, the requirement that "the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard" for defendants. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). Finally, there are many possible reasons—apart from "waiting on the sidelines" to see what happens in a class action—why class members might elect to exclude themselves. To not apply collateral estoppel because the opt out plaintiffs might be "waiting on the sidelines" would undermine the important policy reasons for applying collateral estoppel. Courts which have enforced the offensive use of collateral estoppel have not considered the motives of those plaintiffs who, though not joining in the first lawsuit, seek the benefit of the judgment in a subsequent lawsuit. This court will likewise not indulge in exploring the motives of the opt out plaintiffs who seek to assert collateral estoppel based on the Delaware Supreme Court's decision in *Lynch.* The overriding considerations are whether the defendants had a full and fair opportunity to litigate in the Delaware proceedings and whether judicial economy would be served by an application of collateral estoppel.

*Conclusion and Summary Judgment as to State Law Claims*

In sum, the court concludes that under principles of collateral estoppel, plaintiffs who opted out of the Delaware class are not prohibited by the mutuality rule or the class action rules from claiming the benefit of the judgment won by that class with respect to both their state and federal law claims. Regarding plaintiffs' state law claims, defendants have not contended that they did not have a full and fair opportunity to litigate them in the Delaware action. Indeed, defendants have conceded that, under principles of res judicata, the Delaware Supreme Court's decision in *Lynch* precludes relitigation of the state law claims against Vickers and Esmark asserted by those plaintiffs who were members of the Delaware class. Moreover, the court's examination of the record indicates that defendants had a full and fair opportunity to litigate their state law claims, and permitting defendants to relitigate them here as to the opt out plaintiffs would clearly be a waste of judicial resources. In light of the above and in view of this court's determination that collateral estoppel may be asserted by those plaintiffs who excluded themselves from the Delaware class, the court is of the opinion that the plaintiffs who opted out of the Delaware class are entitled to summary judgment on their state law claims on the issue of liability. Whether any of the plaintiffs are entitled to summary judgment on their federal claims on the issue of liability is the next issue to be decided.

## II. Are All Plaintiffs Entitled to Summary Judgment on Their Federal Claims?

Defendants argue that all plaintiffs, whether or not they opted out of the class in Delaware, are not entitled to summary judgment on any of their federal claims because the legal standards of liability are not the same for the federal and state claims. Defendants contend that one essential element of plaintiffs' claims under Section 14(e), Section 10(b), and Rule 10b–5—scienter—was not an element of the breach of fiduciary duty claim decided by the Dela-

ware Supreme Court in *Lynch*. Defendants argue that because they may prevail on the federal claims even though they lost on plaintiffs' state law claims, plaintiffs are not entitled to summary judgment on their federal claims under principles of collateral estoppel.

Defendants state that it cannot be disputed that Rule 10b–5 requires scienter, in light of the Supreme Court's pronouncements in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Moreover, defendants submit that scienter is an essential element for establishing liability under Section 14(e). Defendants assert that the *Lynch* decision cannot be relied on by plaintiffs to establish scienter since the issue was not litigated in the Delaware court. On the contrary, defendants maintain that the Delaware Supreme Court imposed a standard of absolute liability on Esmark and Vickers as the majority shareholder of TransOcean for breach of a fiduciary duty of full disclosure. They assert that the Court did not find that "either of the defendants acted with intent to deceive, recklessly or even negligently." (Memorandum of Defendants in Opposition to Plaintiffs' Motions for Summary Judgment at 13). Defendants conclude that they cannot be collaterally estopped on the issue of scienter in the absence of any finding by the Delaware Supreme Court which would support the conclusion that, as a matter of law, they acted with the requisite scienter.

Both the Illinois and New York plaintiffs note that this court has already determined that "the ultimate issue of full disclosure decided in *Lynch* is the same issue to be decided here." *TransOcean, supra* at 1223. They submit that, based on the Delaware Supreme Court's decision in *Lynch,* defendants are estopped to litigate the issue of full disclosure. As for defendants' argument that they should not be estopped to litigate the issue of scienter, plaintiffs assert that there was a finding by the Delaware Supreme Court that defendants acted with the requisite scienter.[13] Plaintiffs assert that the scienter requirement is met by defendants' conscious decision not to include certain facts in the tender offer which the Delaware Supreme Court found to be material as a matter of law.

Defendants assert that plaintiffs have incorrectly interpreted the scienter requirement. They disagree with plaintiffs that scienter is established by defendants' conscious decision not to include certain information in the tender offer which the Delaware Supreme Court found to be material. They submit that such an interpretation would render the concept of scienter meaningless, imposing on its stead absolute liability for honest errors in judgment. Moreover, defendants state that recent cases demonstrate that in a case such as this, proof of scienter requires a showing not only that the defendants consciously decided not to disclose the information, but also that the nondisclosure created an "obvious danger" of misleading buyers or sellers. Defendants argue that since the Delaware Supreme Court found only that material facts had been omitted and that this failure constituted a breach of fiduciary duty, they cannot be estopped on the issue of scienter.

The court has reviewed the trial and appellate record, the Delaware Supreme Court's opinion, and the applicable law. For the reasons hereinafter stated, the court is of the opinion that defendants are estopped to relitigate the issue of scienter and that all plaintiffs are entitled to summary judgment on their federal claims on the issue of liability.

In *Ernst & Ernst v. Hochfelder, supra,* the United States Supreme Court held that negligence is an insufficient basis for Rule 10b–5 liability and stated that some form of scienter is required. While the Court initially defined scienter as a "mental state

---

**13.** Among the other arguments made, Illinois plaintiffs submit that defendants are not entitled to relitigate the full disclosure issue raised by Section 14(e) because scienter is not an element of a Section 14(e) claim. In light of the court's determination, *infra,* that defendants are estopped to litigate their federal claims, the court need not decide whether scienter is an element of a Section 14(e) claim.

embracing intent to deceive, manipulate or defraud," it seemed to limit this definition to the case before it. *Id.* 425 U.S. at 193–94 n. 12, 96 S.Ct. at 1381. Other language and reasoning in the opinion appear to contradict the court's initial and strict definition of scienter. For example, although it did not decide the issue, the Court recognized that, for purposes of satisfying the scienter requirement, "[i]n certain areas of the law recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act." *Id.* In addition, other language in the opinion reveals that the Court did no more than reject negligence as a basis of liability under Rule 10b–5, lending credence to the view that "knowing or intentional" misconduct satisfies the scienter requirement. *Id.* at 197, 198, 96 S.Ct. 1375.

Courts which have interpreted the *Hochfelder* decision have concluded that the scienter requirement should be interpreted broadly. In *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977), the Seventh Circuit stated that while prior to *Hochfelder* there was some disagreement among the Circuits whether negligence alone would support 10b–5 actions, "there has not been any inter-Circuit controversy that *scienter* short of specific intent to defraud is sufficient to support liability." *Id.* at 1044 n. 16. Moreover, the court in *Sundstrand* ruled that the district court acted correctly in employing the "intentional or reckless test" in determining whether the scienter requirement was satisfied. *Id.* at 1039.

Likewise, the Ninth Circuit has recently concluded that the scienter requirement of *Hochfelder* should be interpreted broadly. *Nelson v. Serwold,* 576 F.2d 1332 (9th Cir., 1978). In adopting a "knowing or reckless" test, the Ninth Circuit stated at 1337:

> In his analysis of statutory language [in *Hochfelder*], Justice Powell apparently accepted a knowledge standard, concluding that the language "strongly suggest[s] that § 10(b) was intended to proscribe *knowing* or intentional miscon-

duct." . . . Also, the Securities & Exchange Commission's argument that "Congress must have intended to bar all such practices and not just those done *knowingly* or intentionally" strongly suggests that section 10b was intended, at a minimum, to proscribe knowing or intentional wrongdoing. . . . In addition, we note that the Court cites no cases or commentaries indicating a requirement of strict common law intent. . . . (Emphasis added by Ninth Circuit).

> Although the Supreme Court left undecided the question whether recklessness is sufficient to support liability under Rule 10b–5, distinguished jurists have long considered it so. . . . And since *Ernst & Ernst,* courts have continued to assess Rule 10b–5 liability for reckless behavior.

> *Ernst & Ernst, we think only went so far as to eliminate negligence as a basis for liability.* We agree with those courts which have found that *Congress intended the ambit of § 10(b) to reach a broad category of behavior, including knowing or reckless conduct.* (Emphasis supplied).

■ Thus, both language in *Hochfelder* and its progeny indicate that the Supreme Court's holding in *Hochfelder* did no more than reject negligence as a basis for liability under Rule 10b–5 and establish that some form of scienter is a necessary element of a Rule 10b–5 cause of action. In addition, post-*Hochfelder* authorities make it clear that an "intentional or reckless" test, as opposed to a strict common law test, may be used to determine whether the scienter requirement is met.

Under the "intentional" or "knowing" aspect of this test, "actual knowledge of misstatements, irrespective of intent," fulfills the scienter requirement. *See* Bucklo, *The Supreme Court Attempts to Define Scienter Under Rule 10b–5: Ernst & Ernst v. Hochfelder,* 29 Stan.L.Rev. 213, 219 (1977). *See also Nelson v. Serwold, supra* at 1337, "[i]t appears that defendants' omissions were, at the very least, with knowledge." Contrary to defendants' suggestion, the "intentional" or "knowing" approach does not

impose absolute liability on defendants. The approach is consistent with *Hochfelder* and its progeny, and it will help protect investors from various practices condemned by the federal securities laws.

In the case at bar, the "intentional" or "knowing" test is clearly met. The Delaware Supreme Court found, as a matter of law, that defendants failed to disclose fully two material facts [14] in the tender offer [15] and that these failure were made knowingly. First, the Delaware Supreme Court had before it defendants' contentions that their actions were intentional and planned.[16] Moreover, as the Delaware Supreme Court found, defendants were in possession of and had knowledge of material information which they deliberately withheld from the minority shareholders. For example, in the tender offer defendants disclosed only the lowest net asset value of TransOcean, when defendants were in possession of and aware of a much higher estimate prepared by Forrest Harrell, a petroleum geologist and a Vice President of TransOcean. In addition, the Delaware Supreme Court viewed defendants' knowing failure to disclose material information as vital to the case before it: "The objective, of course, is to prevent insiders from using special knowledge which they may have to their own advantage and to the detriment of the stockholders." *Lynch, supra* at 281. The Delaware Supreme Court cited to a federal decision under Rule 10(b)5 of the Securities Laws, as well as to pages of Loss' well-known treatise on federal securities regulation dealing with fraud concepts under the SEC stat-utes. One of the sentences on the pages cited by the Delaware Supreme Court illustrates how the Delaware court viewed defendants' conduct: "[i]t is now quite clear that a half-truth is as bad as an outright lie." 3 L. Loss, *Securities Regulation* at 1433 (2d ed. 1961). Defendants' knowing failure to fully disclose all material facts was tantamount to disclosure of only half the truth. Such conduct constitutes scienter.

The mere fact that the Delaware Supreme Court did not find that there was a specific intent to deceive or harm investors as a result of the deception is, as has been stated earlier, of no moment. *Sundstrand Corp. v. Sun Chemical Corp., supra* at 1044 n.16. Defendants' knowing and intentional conduct satisfies the scienter requirement, and in light of the Delaware Supreme Court's opinion defendants should be estopped to litigate the question of scienter.

Defendants, however, contend that the post-*Hochfelder* authorities such as *Sundstrand Corp. v. Sun Chemical Corp., supra,* demonstrate that proof of scienter requires a showing "not only that the defendant consciously decided not to disclose the information, but also that the nondisclosure created an obvious danger of misleading buyers or sellers." (Reply Memorandum of Defendants in Opposition to Plaintiffs' Motions for Summary Judgment at 9). Defendants have misread *Sundstrand* and other post-*Hochfelder* authorities. In *Sundstrand*, the Court of Appeals for the Seventh Circuit adopted—in the disjunctive—the

---

**14.** Defendants neither contend, nor could they successfully do so, that the standards for determining materiality under Delaware and federal law are different. Although the Delaware Supreme Court often used the term "germane" instead of the term "material," the Court, after reargument, changed its definition of "germane" to the exact words used by the United States Supreme Court to define materiality in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The Delaware Supreme Court also added a citation of the *TSC* case.

**15.** The "two critical facts" which the Delaware Supreme Court found that defendants failed to disclose were "(1) that a 'highly qualified petro-leum geologist' [351 A.2d at 574], who was a member of TransOcean's management, had calculated the net asset value to be worth significantly more than the minimum amount disclosed in the tender offer; and (2) that Vickers' management had authorized open market purchases of TransOcean's stock during the period immediately preceding the $12 per share tender offer for bids up to $15 per share." *Lynch, supra* at 280.

**16.** Defendants have not contended that they omitted the information from the tender offer because of negligence. Nor have defendants contended that they genuinely forgot to disclose the information or that it never occurred to them to disclose it.

"intentional *or* reckless" standard for determining scienter. *Id.* at 1039. (Emphasis supplied). Under the circumstances of the case, the Court went on to apply the reckless aspect of this test and it found recklessness—the functional equivalent of intent—present. As the New York plaintiffs correctly note, where, as here, defendants concede that their conduct was knowing and deliberate, it is unnecessary to explore whether defendants' conduct was reckless. (New York Plaintiffs' Memorandum in Response to Defendants' May 22, 1978 Memorandum at 7, footnote, and at 10). Contrary to defendants' assertion, the demonstration that the nondisclosure created an obvious danger of misleading buyers or sellers is required only under the reckless aspect of the *Sundstrand* test.

■ Nevertheless, even assuming *arguendo* that defendants are correct that there must be a showing here that nondisclosure created an obvious danger of misleading buyers or sellers, the decision of the Delaware Supreme Court is dispositive. In finding that the defendants had violated their "fiduciary duty to plaintiff which required 'complete candor' in disclosing fully 'all of the facts and circumstances surrounding the' tender offer", *Lynch, supra* at 279, the Delaware Supreme Court specifically ruled that defendants had "failed to disclose fully *two critical facts.*" *Id.* at 280. (Emphasis supplied). Citing to federal securities law cases such as *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Delaware Supreme Court found that, as a matter of law, defendants had failed to fully disclose

material information to which the minority stockholders had a right. In fact, to overturn the Vice Chancellor's findings, the Court had to conclude, and did conclude, albeit in different language, that the nondisclosure created an "obvious danger" of misleading the minority shareholders: the Delaware Supreme Court found that defendants violated their fiduciary duty by failing to disclose the substance of a report which *"[w]ithout question"* included the "type of information which a reasonable shareholder would consider important in deciding whether to sell or retain stock." *Lynch, supra* at 281. (Emphasis supplied). This determination was essential to its judgment, thus collateral estoppel may be applied. To reverse the Vice Chancellor, the court had to rule as a matter of law that defendants unquestionably failed to make critical disclosures. Accordingly, in light of the Delaware Supreme Court's determination that defendants failed to disclose critical facts that were without question important, it is beyond cavil that nondisclosure created an "obvious danger" of misleading the TransOcean minority shareholders.[17]

### III. Are Plaintiffs Entitled to Summary Judgment Against Any of the Individual Defendants or TransOcean?

In addition to seeking to assert the Delaware judgment against Esmark and Vickers, plaintiffs also seek to assert the Delaware judgment against the individual defendants in the federal cases and against TransOcean, also a defendant in the federal cases.[18] This attempted use of estoppel is

---

**17.** Defendants assert in a footnote in their memorandum in opposition to plaintiffs' motions for summary judgment that while reliance is presumed as to the class members in class action cases, New York plaintiffs, as opt outs, must prove reliance upon any alleged material misstatements in the tender offer circular in order to prevail on their federal claims. Since reliance was not litigated in the Delaware action, defendants submit that this is an additional reason why the New York plaintiffs' federal claims must be litigated here. Defendants, however, are wrong as a matter of law that it is incumbent upon the New York plaintiffs to prove reliance. *See, e. g., Herbst v. Interna-*

*tional Telephone & Telegraph Corp.*, 495 F.2d 1308 (2d Cir. 1974).

**18.** As defendants have stated in their Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment at 14 n.1:

The defendants in *Lynch v. Vickers* are Esmark, Vickers and the directors of Trans-Ocean. The defendants in the federal cases include Esmark, Vickers, TransOcean, the directors of Esmark, the directors of Vickers, the directors of TransOcean and certain officers of TransOcean. Some of these individuals have not been made defendants in all of the cases.

based upon this court's order of January 24, 1977, granting summary judgment on the basis of res judicata and collateral estoppel in favor of *all* defendants, including Trans-Ocean and all individual defendants. This court ruled that:

> Although some defendants in this action, TransOcean and the directors of Esmark, were not parties in *Lynch,* these defendants are in privity with the *Lynch* defendants. TransOcean is in privity with its Board of Directors and Esmark's Board of Directors is in privity with Esmark. *TransOcean, supra* at 1215 n.5.[19]

Defendants, while recognizing the court's ruling, contend that no finding of liability has been made with respect to the directors of TransOcean and that the issue of directors' liability is presently before the Delaware Chancery Court on a motion to dismiss. Moreover, they assert that these directors have personal defenses which were not available to the corporate defendants. Defendants therefore conclude that in the absence of a decision with respect to the liability of TransOcean's directors, plaintiffs are not entitled to summary judgment against them under principles of res judicata or collateral estoppel on either the federal or state law claims asserted in the federal cases.

As for the directors of Esmark and Vickers, defendants submit that these directors are not liable simply because their corporations are liable. Defendants state that even if the directors of Esmark and Vickers are in privity with their respective corporations, they may not be precluded from relitigating issues which were not, and could not have been raised, in the Delaware proceeding since they were not parties to that action. Like the directors of TransOcean, defendants assert that the directors of Esmark and Vickers have various personal

defenses which have yet to be litigated. Defendants therefore argue that the directors of Esmark and Vickers must be given an opportunity to litigate their defenses here and submit that summary judgment against them is inappropriate.

█ Both the Illinois and New York plaintiffs do not object if the court defers ruling on the motions against the individual defendants until matters are resolved in Delaware. In light thereof, the court will strike the motions for summary judgment against the individual defendants. As for the motions for summary judgment against TransOcean, the court is of the opinion that these motions cannot be granted at this time. TransOcean was not a party in the Delaware action. Although this court has found that TransOcean is in privity with its board of directors, *TransOcean, supra* at 1215 n.5, no decision has been entered in the Delaware action with respect to the issue of the liability of TransOcean's board of directors. Moreover, plaintiffs have not argued or shown that TransOcean is in privity with any other party. Accordingly, the motions for summary judgment against TransOcean will be stricken.

IV. *Are Illinois Plaintiffs Entitled to Summary Judgment on the Derivative Claim in Count III?*

In Count III of the Illinois complaint, Illinois plaintiffs reallege the allegations of Counts I and II[20] and assert a claim for breach of common law fiduciary duties on behalf of the minority shareholders of TransOcean and derivatively on behalf of TransOcean. Illinois plaintiffs seek summary judgment as to liability on the derivative claim of TransOcean.

Defendants argue that even assuming that TransOcean may take advantage of the judgment entered in Delaware, Trans-

---

**19.** It is well-settled that principles of res judicata and collateral estoppel are applicable to privies of parties just as they are to parties. *TransOcean, supra* at 1215.

**20.** Count I of the Illinois complaint is a class action brought on behalf of the minority shareholders of TransOcean at the time of the tender

offer and contains allegations of misrepresentations in the tender offer circular. Count II is a derivative claim brought on behalf of TransOcean. It charges that certain transactions, unrelated to the tender offer, between TransOcean and affiliates of Esmark were unfair to TransOcean.

Ocean has no claim to assert against Vickers and Esmark. Defendants note that the Delaware Supreme Court held that the majority shareholders of TransOcean owed a fiduciary duty of full disclosure to the minority shareholders. They assert that no duty was owed to TransOcean since the tender offer did not involve TransOcean. They also state that no injury to TransOcean has been alleged by plaintiffs. They further note that a derivative action is one brought by a shareholder to prosecute a claim which the corporation has declined to prosecute. Fed.R.Civ.P. 23.1. Since TransOcean has no claim, defendants submit that the derivative action must fall.

Plaintiffs state that defendants are simply incorrect in their assertion that "no duty was owed to TransOcean since the tender offer transaction did not involve TransOcean." They submit that TransOcean was very much involved at every stage, including preparation of a portion of the tender offer circular at the request of Vickers. Plaintiffs also state that defendants are equally incorrect in their assertion that "no injury to TransOcean has been alleged by plaintiffs."

■ The court's review of the Illinois complaint reveals that TransOcean is alleged to be a wrongdoer and a participant in the preparation and dissemination of the tender offer circular. Moreover, the complaint alleges, pursuant to Fed.R.Civ.P. 23.-1, that no demand for the relief sought was made upon the officers, directors, or majority stockholders of TransOcean because it would have been futile since they are controlled by Vickers and Esmark. Accordingly, defendants' argument that TransOcean has no claim is without merit.

Nevertheless, defendants argue that even if TransOcean has a claim, "these plaintiffs and their attorneys have an immediate conflict of interest and are barred from representing TransOcean." (Defendants' Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment at 19). Defendants submit that plaintiffs cannot sue TransOcean (as they do in Counts I and III) and seek to represent TransOcean's interest in a suit against the other defendants. In addition, defendants state that plaintiffs are seeking recovery on behalf of the minority stockholders in the class action. Defendants submit that plaintiffs have a conflict in attempting to represent TransOcean in seeking damages when at the same time they are seeking to recover those same damages as shareholders.

In response, plaintiffs state that the great weight of recent authority indicates that simultaneous representation of a class seeking relief against a corporation and a derivative plaintiff seeking relief for the benefit of the corporation is not improper, at least until such time as a conflict becomes real, rather than theoretical. Moreover, plaintiffs maintain that this court has ample authority to prevent any derivative recovery from accruing to the benefit of Vickers.

■ With respect to the conflict of interest issue, the court agrees with plaintiffs. It is well-settled that shareholders have the right to bring direct and derivative actions simultaneously. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977). Of course, there is always a theoretical conflict of interest in situations where a plaintiff in a single lawsuit seeks redress not only on behalf of the corporation but also from the corporation. *Kammerman v. Pakco Companies, Inc.*, CCH Sec.L.Rep. ¶ 96,318 at p. 93,065, n.3 (S.D.N.Y.1978). Nevertheless, the great weight of authority rejects a *per se* rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted "antagonism" between the primary and derivative actions is merely a "surface duality." *Id.; Bertozzi v. King Louie International, Inc.*, 420 F.Supp. 1166, 1179–80 (D.R.I.1976). At this stage of the proceedings, there is merely a potential conflict of interest present. Moreover, if this potential conflict should crystallize, for example, if and when the question of remedy is reached, the court has sufficient authority to deal with any problems that may arise. *See, e. g., Id.* at 1180.

Finally, just as the opt outs may take advantage of the judgment entered in Delaware, so may TransOcean. Since defendants' arguments are without merit, Illinois plaintiffs are entitled to summary judgment on the derivative claim in Count III on the issue of liability.

CONCLUSION

In conclusion, those plaintiffs who excluded themselves from the Delaware class are entitled to summary judgment on their state law claims against Esmark and Vickers on the issue of liability. All plaintiffs are entitled to summary judgment on their federal claims against Esmark and Vickers on the issue of liability. Plaintiffs' motions for summary judgment against the individual defendants and TransOcean are stricken. The Illinois plaintiffs are entitled to summary judgment against Esmark and Vickers on the derivative claim in Count III of their complaint on the issue of liability.

For the reasons stated, it is therefore ordered that plaintiffs' motions for summary judgment shall be, and the same are hereby, granted in part and stricken in part.