Ronald J. AIELLO, Plaintiff,

v.

The CITY OF WILMINGTON et al., Defendants.

Civ. A. No. 74–216.

United States District Court, D. Delaware.

March 28, 1979.

John S. Grady, Bader, Dorsey & Kreshtool, Dover, Del., for plaintiff.

Jeffrey Goddess, City Sol., and Charles H. Toliver, IV, Asst. City Sol., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This case presents the question whether a civil-rights plaintiff may seek a jury trial for monetary damages against a municipality under the authority of *Monell v. New York City Department of Social Services,*

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), after a jury has rendered a verdict on special interrogatories exonerating all individual municipal officers from liability. The facts giving rise to the plaintiff's claim against both the municipality and individual officers have been detailed elsewhere[1] and will be reiterated here only to the extent that they are pertinent to the Motion for a New Trial now before the Court.

The plaintiff, Ronald J. Aiello, was employed as a fireman for the City of Wilmington from June 1966 until November 1975. On January 30, 1973 at 1:00 a.m., he was found lying face down behind a counter at the Record Museum, a commercial establishment in Wilmington, with Record Museum property on his person. He conceded that he was intoxicated at the time and that he entered the shop by breaking a glass panel on the door. Immediately following the burglary he was suspended without pay from the Department of Fire. The burglary charges were dropped on April 20, 1973. Following his suspension, a series of events not relevant here took place within the Department that produced a 98–day lapse between his suspension and his hearing before the Department Trial Board and culminated in a decision by the Board that he not be paid for the pre-hearing period of suspension from January 30, 1973 to May 8, 1973, during a portion of which time he believed he could not and as a result did not seek alternative employment. The Trial Board further ruled that plaintiff be assessed 1000 penalty hours on each of two violations of the Fire Department's Rules and Regulations,[2] that he be placed on a two-year probation and be reinstated as of May 9, 1973, the day after the Trial Board's hearing. The plaintiff chose to work the 2000 penalty hours prior to his retirement in November of 1975. Prior to that date, however, he suffered a breakdown requiring hospitalization and psychiatric care.

After he had returned to work following his illness, he voluntarily retired from the Department of Fire on November 7, 1975.

During the time he was serving the penalty hours, he filed his Complaint in this Court, in which he alleged a variety of constitutional claims and one claim under state law and prayed for both injunctive relief and damages. This Court declined to exercise pendent jurisdiction over the state-law claim,[3] and ruled in favor of the defendants on some but not all of the constitutional claims on defendants' motion for summary judgment. Prior to trial, the City of Wilmington moved for dismissal of plaintiff's claim against it for monetary damages asserting that the law both in the District and the Third Circuit did not recognize a direct cause of action under the Fourteenth Amendment and that *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1964), precluded a § 1983 suit against it. This Court entered an order to that effect.[4] Plaintiff's claim for injunctive relief against the City of Wilmington remained for trial, however, and consequently the latter was never dismissed as a party and has participated in all stages of this litigation, including the trial before the jury and the Court in May 1978.

Remaining for the jury's consideration were two claims, both arising under the Due Process Clause: (1) whether the 98–day delay between the plaintiff's suspension and his trial board hearing was so unreasonable as to violate plaintiff's constitutional rights and (2) whether the imposition of the 2000 penalty hours was so fundamentally unfair as to deny due process. Because the jury could not consider any claim for equitable relief, any cause of action that plaintiff may have had against the City of Wilmington at that time was not considered by the jury, although the City was before the Court as a party on the equitable claim. At the close of the trial the jury was given

---

1. *Aiello v. City of Wilmington,* 426 F.Supp. 1272 (1976).

2. The Fire Department offered plaintiff a choice of being suspended the 2000 penalty hours without pay or working those hours without pay in addition to his regular duty.

3. 426 F.Supp. at 1295.

4. Doc. 120.

eight interrogatories, only two of which they answered.[5] The jury's verdict was, first, that the 98–day delay between plaintiff's suspension and his trial board hearing was not unreasonable given all of the circumstances and, second, that the imposition of the penalty was not so fundamentally unfair as to deny due process.[6] On May 15, 1978 judgment was entered in favor of the three individual defendants.[7]

Prior to this Court's issuance of its Findings of Fact and Conclusions of Law with respect to the plaintiff's claim for equitable relief,[8] the Supreme Court ruled in *Monell v. New York City Department of Social Services, supra,* that its seventeen-year-old decision in *Monroe v. Pape, supra,* was overruled insofar as the latter held that Congress immunized municipalities from claims for monetary damages when it enacted 42 U.S.C. § 1983. As a consequence of *Monell,* decided by the Supreme Court on June 6, 1978, plaintiff moved for a new trial for monetary damages before a jury against the City of Wilmington on June 14, 1978.[9]

## I. Application of Monell to Cases Pending at the Time of Decision

Whether *Monell* may be applied to a pending case after a trial has been conclud-

---

**5.** The special interrogatories, Doc. 127, are set forth in their entirety:

1. Do you find that all or part of the 98 day period between Mr. Aiello's suspension and trial board hearing was unreasonable given all of the circumstances of this case?
 —yes —no
[If the answer to question 1 is yes, proceed to question 2. If the answer to question 1 is no, *skip questions 2, 3 and 4 and proceed directly to question 5.*]

2. Did Mr. Levine and/or Chief Blackburn cause all or part of the lapse of 98 days between Mr. Aiello's suspension and trial board hearing?

| | | |
|---|---|---|
| Levine | —yes | —no |
| Blackburn | —yes | —no |

[If the answer to question 2 is yes with respect to either Levine or Blackburn or both, *proceed to question 3. If the answer to question* 2 is no as to both Levine and Blackburn, skip questions 3 and 4 and proceed directly to question 5.]

3. If you answered yes to question 2, you *must determine whether the individual(s) with* respect to whom you answered yes in question 2 is (are) entitled to official immunity with respect to his (their) actions which caused all or part of the 98 day interval between Mr. Aiello's suspension and trial board hearing.

| | | |
|---|---|---|
| Levine | —yes | —no |
| Blackburn | —yes | —no |

[If the answer to question 3 is yes, proceed directly to question 5. If any portion of question 3 is answered no, proceed to question 4.]

4. If you have answered no to any part of question 3, how much, if anything, do you award to plaintiff as compensatory damages for all or part of the 98 day interval between suspension and the trial board hearing?
 $———

5. Do you find the penalty given Mr. Aiello to be so arbitrary and capricious given all the circumstances of this case as to be fundamentally unfair?
 —yes —no

[If the answer to question 5 is yes, proceed to question 6. If the answer to question 5 is no, you should go no further.]

6. If the answer to question 5 is yes, which, if any, of the following defendants is (are) responsible?

| | | |
|---|---|---|
| Levine | —yes | —no |
| Blackburn | —yes | —no |
| DiOrio | —yes | —no |

7. If you answered yes to question 6, you must determine whether the individual(s) with respect to whom you answered yes in question 6 is (are) entitled to official immunity with respect to his (their) actions which resulted in *the penalty given to Mr. Aiello.*

| | | |
|---|---|---|
| Levine | —yes | —no |
| Blackburn | —yes | —no |
| DiOrio | —yes | —no |

8. If you have answered no to any part of question 7, how much, if anything, do you award to plaintiff as compensatory damages for the imposition of the penalty?
 $———

**6.** Special Interrogatories 1 and 5, *id.,* were answered "No."

**7.** Doc. 130.

**8.** The Court's decision on plaintiff's claim for equitable relief was reserved, pending decision on plaintiff's motion for a new trial. Today the Court issued its Findings of Fact and Conclusions of Law with an accompanying Order on the equitable claim. Doc. 143.

**9.** Rule 59, of the Federal Rules of Civil Procedure, and specifically subsection (b) of that Rule, calling for new trial motions to be made *within ten days of the entry of judgment, does* not stand in the way of plaintiff's motion, because the judgment perforce pertained only to the individuals and not to the municipality itself as to which a new trial was demanded. Rule 59 appears *to be inapposite to situations* like that now before the Court.

ed and judgment entered on the jury verdict presents a preliminary question. Without great enthusiasm, defendants argue that *Monell* should be given prospective application only, although they concede that prospective-only application of a decision is the exception rather than the rule. 1B *J. Moore's Federal Practice* ¶ 0.–402[3.–2–1], at 171. They argue first, that the decision sharply altered the law and second, that the defendant City will suffer prejudice if it is required to retrace its path on a damages claim when it has already traversed it for purposes of equitable relief. Other than the inconvenience and expense of a second trial, however, the defendant City has not enlightened the Court as to any specific procedural or substantive unfairness resulting from a new trial at this belated stage of the proceedings.

■ The defendant's plea for prospective-only application of *Monell* is rejected for several reasons. The Supreme Court's decision in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1972), sets forth the concerns that might justify prospective-only application:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed, . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–07, 92 S.Ct. at ·355 (citations omitted). Although no one seriously disputes *Monell's* surprising departure from its precedents, it is readily apparent that *Monell* does not fit within the small number of cases in which prospective-only application would be justified. First, it cannot be argued that the earlier decision established a rule of substantive conduct on which the municipality relied and which was altered in *Monell.* As exemplified by this case, municipalities have always. been amenable to suit for declaratory and injunctive relief, and the constitutional standards of conduct applicable to individual defendants have always been equally applicable to them. In short, the City of Wilmington cannot claim that it detrimentally relied upon *Monroe v. Pape, supra,* in its dealings with plaintiff.[10] As for the defendant's argument that "this litigation is at an end" and hence inequity would result if the City were put to the trouble of relitigation, the short answer is simply that if plaintiff has a claim for damages under the Civil Rights Act against the City, the equities in favor of a new trial in a pending matter would strongly outweigh any asserted inconvenience to the municipality. Moreover, no appealable order has yet been entered in this litigation. At the time plaintiff filed his motion, all defendants, including the City, awaited this Court's ruling on plaintiff's claim for equitable relief. The Court concludes that the Supreme Court's decision in *Monell* applies to this case to revivify plaintiff's claim for damages against the City of Wilmington.

## II. Application of the Doctrine of Collateral Estoppel to this Case

### A. Finality of Judgment Rendered on Jury's Verdict

Although the decision in *Monell* has the effect of bringing to life a cause of action

---

10. Reliance on overruled precedents for a standard of conduct arises most prominently as a factor in prospective-only application when the new rule is in the areas of substantive or procedural criminal law. *See, e. g., Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

against the City for monetary relief, the City argues that plaintiff is nonetheless estopped from relitigating issues determined against him in the jury trial that resulted in a verdict in favor of the three individual defendants.

■ An initial difficulty is that finality—in the sense of appealability—had not attached to the judgment entered in favor of the individual defendants when plaintiff moved for a new trial because the Court only today ruled on the equitable issue as to any of the defendants, having reserved decision pending a ruling on plaintiff's motion for a new trial. As a general rule, principles of collateral estoppel do not pertain to nonfinal orders or judgments. *See* 1B *Moore's Federal Practice, supra,* at 1001 and n.5. Under some circumstances, however, an interlocutory order may be final for res judicata purposes if "in respect to some particular matter it makes a final disposition, in which case it is res judicata as to that one matter." *Id.* at 1002.

In the matter before the Court, all that was lacking to render the judgment on the jury verdict final and appealable was this Court's ruling on the equitable issue against all parties.[11] This Court was bound, again by principles of res judicata or collateral estoppel, to make factual findings consistent with the jury's conclusion that the prehearing delay was reasonable and that the imposition of the penalty hours was not fundamentally unfair. *Beacon Theatres v. Westover,* 359 U.S. 500, 504, 505, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Caputo v. U. S. Lines Co.,* 311 F.2d 413, 416 (2d Cir. 1963).[12] Thus, there was not the slightest possibility that the jury's verdict would be overturned or undermined in this Court. Nor is that a possibility now, although of

course the verdict may suffer reversal upon appeal. At least at the trial stage, the judgment was final in the sense of inalterable from the date it was entered.

■ At least two Courts of Appeals have observed that finality for res judicata purposes need not be coextensive with the finality necessary to permit an appeal.

Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i. e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *accord, Pye v. Department of Transportation,* 513 F.2d 290, 292 (5th Cir. 1975). Applying the flexible approach advocated by the Second Circuit, this Court stresses that with respect to its decision on the equitable claim, *at least as against the individual municipal officers,* the Court was constrained to make a ruling consistent with the jury's findings on special interrogatories. For the Court's ruling to find liability on either theory when the jury expressly rejected such liability would seriously undermine the jury's responsibility. Moreover, to do so would engender doubt as to whether the verdict in favor of the individual defendants could be permitted to

---

11. *See* note 8 *supra.*

12. The preclusive effect of the jury's factual finding upon the Court's disposition of plaintiff's claim for equitable relief should be distinguished from conventional concepts of collateral estoppel. Both, of course, preclude inconsistent determinations of identical issues. The former preclusion, however, does not turn on the conclusiveness of a final judgment but rather prevents inconsistent factual findings from

arising in the same proceedings. *See Beacon Theatres, supra,* 359 U.S. at 504, 505, 510–11, 79 S.Ct. 948. Were it not for the necessity of consistent factual findings, there would have been no reason for the Supreme Court's ruling in *Dairy Queen Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed 2d 44 (1962), that preservation of a party's right to a jury trial required, that legal issues be submitted to a jury prior to a court's decision on equitable issues.

stand, for unlike many cases, the equitable claim remaining for the Court's consideration did not pose new questions on the issue of liability but simply requested another type of relief, if a violation were found. It is concluded that the judgment entered in favor of the three individual defendants, although interlocutory at the time plaintiff moved for a new trial, falls into the limited category of nonappealable orders that may be deemed final for res judicata purposes.

### B. Effect of Special Interrogatories on Application of Collateral Estoppel Principles

█ In order for principles of collateral estoppel to bar relitigation of plaintiff's constitutional claims against the municipality,[13] the issues sought to be relitigated must have been actually litigated and decided adversely to plaintiff in the prior adjudication. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

Crucial to defendant's argument that plaintiff is barred by collateral estoppel are the responses to the only two special interrogatories that the jury answered when it returned its verdict:

1. Do you find that all or part of the 98 day period between Mr. Aiello's suspension and trial board hearing was unreasonable given all of the circumstances of this case? (Ans.) No.

5. Do you find the penalty given Mr. Aiello to be so arbitrary and capricious given all the circumstances of this case as to be fundamentally unfair? (Ans.) No.

As the discussion below will illustrate, defendant's all-or-nothing reliance on these responses is not ill-advised.

█ The plaintiff is correct that *Monell* envisions liability against a municipality only for unconstitutional decisions, policies and practices and therefore that the presence of the municipality before the jury would have counselled in favor of a different thrust in the presentation of evidence. *Monell v. New York City Department of Social Services, supra,* 436 U.S. at 690, 98 S.Ct. 2018. It is also correct that "a change in legal standards may warrant the reopening of a case where additional testimony would be pertinent to the change of law," *Skehan v. Board of Trustees,* 590 F.2d 470 at 479 (3d Cir. 1978), just as a change in the pertinent legal doctrine may impede application of collateral estoppel to a judgment, *State of Montana v. United States,* —— U.S. ——, ——, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Nonetheless, plaintiff conceded at oral argument on his motion for a new trial that he will not press any theory of liability against the municipality other than the unreasonableness of the pre-hearing delay and the trial board's imposition of the penalty hours. But having made that concession, plaintiff fails to account for the fact that when the jury answered these questions in the negative, it did so in the abstract, without reference to any individual defendant's complicity. In fact, the jury was directed to consider any individual's

---

**13.** Although the point is of little practical consequence, it should be mentioned that the usually neat distinction between collateral estoppel, precluding the relitigation of an *issue* in a subsequent lawsuit on a different cause of action, and res judicata, precluding relitigation of the same cause of action, *see Parklane Hosiery Company, Inc. v. Shore,* —— U.S. ——, —— n.5, 99 S.Ct. 645, 58 L.Ed. 552 (1979), is somewhat blurred in this instance. This is so because *Monell's* holding that cities are only liable for official policies, practices or decisions has the effect of increasing a plaintiff's burden of proof against the municipal defendant by requiring additional proof of that unconstitutional policy or practice at least when the poli-cy is not a public one, as it was in *Monell.* In plaintiff's situation, the findings of a violation per se would form the necessary predicate to a finding of the municipality's unconstitutional official policy. Consequently, since the claim differs slightly, res judicata—as distinct from collateral estoppel—is not strictly applicable.

For the reasons stated in the text, however, where a verdict was rendered on special interrogatories, the application of collateral estoppel to preclude relitigation of issues has the effect of foreclosing a new trial altogether, since the City cannot be held liable for an unconstitutional policy or decision when it has been found that plaintiff's constitutional rights were not violated at all. *See infra.*

liability only after it had found that a due process violation had occurred.[14]

■ Under *Monell's* policy-or-practice theory of liability, of course, it is conceivable that a municipality could be held liable even when individual actors are not and that at this stage of proceedings a new trial might have to be granted in some instances. *Cf. McKnight v. SEPTA*, 583 F.2d 1229, 1234 and n.6 (3d Cir.1978). That avenue, however, is foreclosed here. For plaintiff to show, for example, that the municipality has adopted a policy of unreasonable pre-hearing delays he would have to relitigate the prior determination, expressly set forth in the jury's answer to Interrogatory 1, that the delay plaintiff suffered was not unreasonable. The wording of the special interrogatories divorced the challenged actions from any individual's participation in them and hence leaves no room for doubt that the jury, having found no infringement of plaintiff's constitutional rights, never even considered any individual's liability. Essentially, the jury's verdict signified *not* that the individual defendants did not violate plaintiff's rights but that plaintiff's rights were not transgressed. Therefore, even though "the legal principles have changed significantly" since plaintiff's first jury trial, *State of Montana v. United States, supra* —— U.S. at ——, 99 S.Ct. at 975, *Monell* does not alter plaintiff's claim to the extent that the jury's finding that no violation occurred is undermined.

Consequently plaintiff's contention that the presence of the municipality before the jury would have compelled him to try the entire case differently is misdirected. He concedes not only that no other specific acts of unconstitutional conduct would be asserted in a new trial, but also that he has no new evidence to be admitted. Rather he argues, for example, that on a retrial he could aggregate the entire time period and charge it against the municipality. But the flaw in that argument is that it ignores the plain wording of the interrogatories instructing the jury to aggregate the time period if necessary.[15] Further, it fails to recognize the presence of the municipality as a party at the prior trial,[16] if not before the jury for monetary relief then before me on the equitable issue.[17] The aggregation argument was not unavailable at the time of the first trial, as plaintiff implies. Nor were any other arguments that would have been addressed to the municipality's liability. Indeed, the presence of the municipality before the Court would have militated in favor of presenting all available arguments, just as the theory of repose upon which res judicata concepts are based force a party to put his best foot forward on what may be his only opportunity. Plaintiff in essence concedes that only trial strategy and argument of counsel would differentiate his last jury trial from the contemplated second one. That difference alone is insufficient.

Finally, having concluded that plaintiff brings forward no new theory or issue for presentation to a jury, that the two claims that he wishes to retry have been conclusively determined against him, there is left the question whether the lack of mutuality—the fact that plaintiff would be barred by the earlier judgment when defendant

**14.** *See* note 5 *supra.*

**15.** *See* note 5 *supra.*

**16.** Although a party to the prior proceeding, the municipality was not a party to the judgment exonerating its officers. *See* note 7 *supra* and accompanying text.

**17.** Were the first verdict a general one, plaintiff's position would be far stronger, for in that instance the verdict could be interpreted in some manner that would be consistent with a finding of the City's liability. For example, the jury could have believed that none of the individual actors before it contributed sufficiently to a violation to impose liability upon them personally. Similarly, the jury might have believed that although a violation occurred, the officers were responding to some collective or superior decision of the municipality. Consequently, when as here the municipality's liability for unconstitutional conduct is founded on a theory separable from any individual actors, *i. e., other than* respondeat superior, a general verdict in favor of the latter could not be conclusive with respect to the former.

City of Wilmington could not be [18]—forecloses the application of collateral estoppel to the earlier judgment.[19]

The notion that both parties had to be bound by a prior decree in order for collateral estoppel principles to apply was dealt a fatal blow by the Supreme Court's decision in *Parklane Hosiery Company, Inc. v. Shore, supra; see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Now the determination whether collateral estoppel should be applied when mutuality is lacking rests within the considered discretion of the trial court and depends largely on whether any unfairness to the party to the prior judgment, against whom the bar is asserted, would result. *Parklane Hosiery Company, Inc., supra,* —— U.S. at ——, 99 S.Ct. 645.

In that decision, the Supreme Court enumerated some of the concerns that might call for relitigation when the same issue is sought to be relitigated against a new party.[20] The *Restatement of Judgments, Second* (Tentative Draft No. 2) cited with approval by the Supreme Court in *Parklane Hosiery,* enumerates others. Although some are clearly inapplicable to this litigation,[21] a consideration of those that do bear upon plaintiff's situation does not tip the balance to plaintiff's advantage.

Having founded his demand for a new trial solely on the alteration in interpretation of statutory law wrought by *Monell,* plaintiff has asserted no inadequacy of or procedural unfairness in the prior trial of the sort that might block application of collateral estoppel other than the desire to

**18.** To permit a judgment to bar a party from litigating an issue when he was not a party to the prior decree deprives him of an opportunity to be heard and hence violates due process. *Parklane Hosiery Company, Inc. v. Shore, supra,* —— U.S. at —— n.7, 99 S.Ct. 645; *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

**19.** In light of the Supreme Court's reaffirmance in *Monell* that a § 1983 claim against a municipality cannot rest on principles of respondeat superior alone, the Court has no difficulty in making the initial determination that the City of Wilmington is not in privity with the individual defendants as that term is generally used. Employers are generally held to be in privity with their employees when their liability is exclusively derivative. *See generally* 1B *Moore's Federal Practice, supra,* at 1826–27.

Since a finding of the municipality's liability at the close of a second trial would have to be conditioned on the presence of an unconstitutional official policy, had the jury's verdict been in favor of plaintiff, the City would not have been estopped from litigating the *Monell* policy-or-practice issue, although reasoning parallel to that advanced here would suggest that the City would be barred from relitigating the facts of unreasonable delay and unconstitutional penalty. *See generally* note 13 *infra.*

**20.** In *Parklane Hosiery,* the Supreme Court focused on the question whether "offensive" collateral estoppel—barring a defendant who lost in a prior proceeding from relitigating the issue of his liability—should be permissible. Here, where defendant invokes the doctrine, the focus is on "defensive" collateral estoppel. In *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* the Supreme

Court made an inroad into the mutuality doctrine when it ruled, in the "defensive" context, that a patentee may not relitigate the validity of a patent once declared invalid. *Id.,* 402 U.S. at 350, 91 S.Ct. 1434. The Supreme Court has observed, however, that this distinction is without great meaning in most instances, *Parklane Hosiery Company, Inc. v. Shore, supra,* —— U.S. at —— & n.16, 99 S.Ct. 645, except to put a slightly higher burden on the proponent of collateral estoppel when it is used offensively. *Id.*

**21.** For example, the *Restatement* lists as a factor against preclusion the possibility that the first adjudication might have had certain restrictions, such as that the determination had no effect outside the forum in which it was made. *Restatement (Second) of Judgments* (Tentative Draft No. 2, 1975) § 88(1) and Comment c. Here, only federal court adjudications are involved. Similarly, the *Restatement* suggests that when a person seeking preclusive effect could have joined his opponent and chose not to, that party may be barred from invoking collateral estoppel. *Id.* § 88(a). That factor has no application when the doctrine is invoked defensively. Nor was the prior determination "relied on as preclusive . . . itself inconsistent with another determination of the same issue." *Id.* § 88(4). Again, the possibility of inconsistent adjudications of the same issue would arise most frequently when a variety of plaintiffs sue a single defendant at different times and invoke collateral estoppel offensively. *See id.; Parklane Hosiery Company, Inc. v. Shore, supra,* at —— & n.14, 99 S.Ct. 645.

proceed in a tactically different manner and present new arguments addressed above. *See State of Montana v. United States, supra,* —— U.S. at —— & n.11, 99 S.Ct. 970. Having chosen the time and place of litigation, a plaintiff as a general matter is not in an ideal position to complain of lack of witnesses, inconvenient forum or lack of initiative. *See State of Montana v. United States, supra.* Indeed, plaintiff has pointed to no procedural disadvantage that would be cured by a second trial, nor does an investigation of the record indicate that plaintiff did not receive a full and fair adjudication of his constitutional claims.

In view of the jury's verdict by special interrogatories on plaintiff's constitutional claims, it is concluded that principles of collateral estoppel foreclose plaintiff, who received an exhaustive hearing on the precise questions that he wishes to resubmit to a new jury, from a relitigation of his claims against the City of Wilmington. Plaintiff's motion for a new trial will be denied.