W. J. ROBERTS & CO., INC., Thames & Mersey Marine Insurance Company Limited, Fireman's Fund American Insurance Companies, the New Zealand Insurance Company, the Baloise Insurance Co., Ltd., the New Hampshire Insurance Company, United States Fire Insurance Company, Insurance Company of North America, and Wm. H. McGee & Co., Inc., Plaintiffs,

v.

S. S. HELLENIC GLORY, her engines, boilers, etc., Hellenic Lines Limited and Transpacific Carriers Corporation, Defendants.

No. 75 Civ. 2048 (CMM).

United States District Court,
S. D. New York.

June 6, 1979.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiffs; Donald M. Kennedy, Francis J. McCaffrey, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendants; John S. Rogers, Derick W. Betts, Jr., New York City, of counsel.

METZNER, District Judge:

Plaintiffs move pursuant to Fed.R.Civ.P. 56 for summary judgment on the ground that defendants are collaterally estopped from denying liability by the decision of Judge Broderick in *Bubble-Up International Ltd., et al. v. Transpacific Carriers Corp.,* 458 F.Supp. 1100 (S.D.N.Y.1978).

Plaintiffs represent certain of the cargo interests on a voyage of the S.S. Hellenic Glory terminated due to a breakdown at sea. Defendants declared a general average and required deposits for anticipated costs and expenses before cargo would be released. Plaintiffs allege payment of deposits totalling $55,308.13. Thereafter plaintiffs brought suit to recover the deposits claiming that the breakdown was due to the failure of the owner to exercise due diligence to make the vessel seaworthy and was not a general average event. The *Bubble-Up* plaintiffs, also cargo interests on that voyage, instituted a similar action.

██ Defendants argue that plaintiffs cannot assert the adverse finding in the *Bubble-Up* case as a collateral estoppel here since the plaintiffs would not have been bound by the opposite decision. The doctrine of mutuality has been severely limited by the Supreme Court in *Parklane Hosiery Co., Inc. v. Shore,* —— U.S. ——, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Applying the guidelines set forth by the Supreme Court, we are dealing here with the offensive use of collateral estoppel. While it is true that plaintiffs here might have intervened in the *Bubble-Up* case, it is also true that the defendants could have consolidated both cases for trial. In fact, this is a classic example for consolidation. The possibility of the existence of collateral estoppel must have been evident at the time the instant suit was filed. The argument that plaintiffs should not be permitted to adopt a "wait and see" attitude which does not promote judicial economy is equally applicable to defendants. It is especially true in this case where the original trial involved only $7,000, while the instant case involves $55,000.

Both suits were filed in this district, a convenient one for the defendants. Defendants had a full and fair opportunity to litigate on the first trial the issue of due diligence as to which the estoppel is asserted.

Defendants argue that because the *Bubble-Up* case involved such a small sum of money, $7,000, they would expend more money to properly prepare their defense to the instant case involving $55,000. If there is any force to the argument under the facts of this case, it is dissipated by the failure to move to consolidate. If this had been done, the preparation for trial and the trial of the consolidated action would have involved only one or two more witnesses. The first trial lasted two days.

Allowing offensive collateral estoppel in this case would not be unfair to defendants because the judgment relied on is not inconsistent with any other judgment in favor of the defendants. Furthermore, there are no procedural opportunities in the present action that were unavailable to the defendants in the first trial which might cause a different result.

Consequently, I find that the defendants are collaterally estopped from relitigating the question of due diligence.

Defendants object further that "plaintiffs have submitted no proof to support its claim that the amount of $55,308.13 was in fact held by Hellenic." Defendants in their answer admitted "the collection of cash deposits by defendants' agents . . . as security to cover the estimated contribution of the goods in general average" (Paragraph Ninth), and "demand for repayment of certain cash deposits in full and non-payment thereof," and itemized the amounts of the deposits (Paragraph Twelfth).

Small inconsistencies exist between the amounts claimed and the amounts admitted in the answer. The amounts admitted are drawn from the general average adjuster's report of deposits he received which is appended to plaintiffs' motion papers. When comparing the claims in the complaint against the report, we find that plaintiffs have overclaims of $199.34. They have one underclaim of $163.58, a difference of $35.76. Thus the amount that plaintiffs are entitled to is $55,272.37.

Summary judgment is granted plaintiffs in the amount of $55,272.37. Interest at the rate of 6 per cent from May 1, 1972, shall be included in the judgment.

So ordered.