MIDCONTINENT BROADCASTING
COMPANY, a corporation,
Plaintiff,

v.

DRESSER INDUSTRIES, INC., a
corporation, Defendant.

FORUM COMMUNICATIONS COMPA-
NY, a corporation, Plaintiff,

v.

DRESSER INDUSTRIES, INC., a
corporation, Defendant.

Nos. CIV77–4104, CIV77–4042.

United States District Court,
D. South Dakota, S. D.

April 7, 1980.

Ellsworth E. Evans and Deming Smith, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for plaintiffs.

Harold C. Doyle, of May, Johnson, Doyle & Becker, Sioux Falls, S. D., and G. Alan Cunningham, of Faegre & Benson, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The above captioned diversity actions are consolidated for the resolution of the pending motions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The plaintiffs are Midcontinent Broadcasting Company (Midcontinent) and Forum Communications Company formerly known as South Dakota Broadcasting Company (Forum). The defendant is Dresser Industries, Inc. (Dresser).

These actions arise out of the collapse of a television broadcasting tower at Rowena, South Dakota, during a severe winter storm on January 11, 1975. The tower had been designed, manufactured, and erected by Dresser for Community Television, Inc. (Community). Community had leased the tower to the plaintiffs and others for the purpose of transmitting television programs. Community is owned equally by the separate plaintiffs, Midcontinent and Forum, and all the directors and officers of Community also serve as officers and directors of either Midcontinent or Forum. However, the present suits are brought by the corporate plaintiffs not as stockholders of Community but as lessees of Community's tower.

On August 19, 1975, the first action relating to the collapse of the tower entitled *Community Television Services, Inc. v. Dresser, Inc.* was filed with this court. Community, as owner of the tower, sought damages for the loss of the tower, antenna, and surrounding buildings on the basis of negligence, strict liability, implied warranty, and express warranty. The case was tried before a jury from November 29, 1976, through December 12, 1976. The implied warranty count was dismissed. The jury determined in favor of Dresser on the negligence and strict liability counts but in favor of Community on its express warranty count. On September 13, 1978, the decision was affirmed by the Eighth Circuit Court of Appeals at *Community Television Services, Inc. v. Dresser, Inc.*, 586 F.2d 637 (8th Cir. 1978), and the Supreme Court of the United States denied certiorari at 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979).

Although at the time of the litigation between Community and Dresser it was apparent to this court that all parties knew the likelihood of future litigation, no effort was made to join potential plaintiffs such as Forum and Midcontinent. Forum filed suit against Dresser on April 8, 1977, soon after its damages from the collapse of the tower

had been determined. On November 22, 1977, shortly after Midcontinent had determined its damages, Midcontinent filed suit against Dresser. The plaintiffs alleged negligence, strict liability, and express warranty as grounds to recover their loss of advertisers and viewers from the interruption in services when the leased tower collapsed.

Now the plaintiffs claim that the previous jury determination of Dresser's liability for breach of express warranty is binding in the present actions. Asserting collateral estoppel, also called issue preclusion, the plaintiffs are seeking partial summary judgment on the issue of the defendant's liability. Dresser claims, however, that the plaintiffs Forum and Midcontinent are precluded from bringing their suits since they did not join in the previous action between Dresser and Community. Dresser has cross-motioned for summary judgment against both plaintiffs on the basis of claim preclusion or res judicata.

*Defendant's Motion—Claim Preclusion.*

 The defendant's motion for summary judgment is grounded on the well established doctrine of res judicata or claim preclusion.[1] After a final judgment on the merits in a suit, claim preclusion bars a second suit by the same parties or privities based on the same cause of action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 f. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The general rule forbids a piecemeal trying of split causes of actions; a party must present his entire claim to the court for disposition. *Carr v. Preslar*, 73 S.D. 610, 47 N.W.2d 497, 500 (1951); *Towle v. Boeing Airplane Co.*, 364 F.2d 590, 592 (8th Cir. 1966). The basis for the doctrine includes protection of a defendant from repetitive litigation, efficient use of judicial resources, and the furtherance of certainty in legal decisions. *Green v. American Broadcasting Co., Inc.*, 572 F.2d 628, 631

(8th Cir. 1978); *Smiley v. South Dakota*, 415 F.Supp. 870, 875 (D.S.D.1976).

 There is no question but that a final judgment on the merits was reached in *Community Television Services, Inc. v. Dresser Industries, Inc.* The privity between Community and the plaintiff is also acknowledged by both Dresser and the plaintiffs. Privity for claim preclusion purposes has been found to require a close relationship "bordering on near identity, between the parties to be precluded and previous parties, since the entire claim rather than a mere issue is precluded." *Green v. American Broadcasting Co., Inc.*, 572 F.2d 628, 631 (8th Cir. 1978); *Robbins v. District Court of Worth County, Iowa*, 592 F.2d 1015, 1017 (8th Cir. 1979), *cert. denied* 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1980). Privity denotes a "mutual or successive relationship to the same right or property." *SoDak Distributing Co. v. Wayne*, 77 S.D. 496, 93 N.W.2d 791 (1958). There is a privity of estate between a lessor and his lessees. *Hudson Transit Corp. v. Antonucci*, 137 N.J.L. 704, 61 A.2d 180, 4 A.L.R.2d 1374 (1948). Community and the plaintiffs are in privity through their relationship as lessee and lessor.

 The determination of whether or not the prior suit between Community and Dresser is based on the same cause of action as the present suits is the sole remaining issue. The generally accepted test utilized to determine the same cause of action is "whether or not the primary right and duty, and the delict or wrong combined are the same in each action." *Engelhardt v. Bell & Howell*, 327 F.2d 30, 32 (8th Cir. 1964); *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 449 (8th Cir. 1979); *Gottschalk v. South Dakota State Real Estate Commission*, S.D., 264 N.W.2d 905 (1978).

 Applying this test the present plaintiffs are found to present against Dresser a separate cause of action than

---

1. Both collateral estoppel and res judicata are substantive law issues requiring application of state law. *Kuehn v. Garcia*, 608 F.2d 1143 (8th Cir. 1979); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Community. A wrongful act affecting different interests in the same property entitles the owner of each interest his separate action against the wrongdoer. The rights of a lessee and the lessor in the same property are divided; therefore, the wrong to each of these rights presents a separate cause of action which reserves to each the right to maintain a separate action against the wrongdoer to redress his individual injury. *See: Arneson v. Spawn,* 2 S.D. 269, 49 N.W. 1066, 1070 (1891); *Hudson Transit Corp. v. Antonucci,* 137 N.J.L. 704, 61 A.2d 180, 4 A.L.R.2d 1374 (1948); *DeJarnette v. Tennessee Gas Transmission Co.,* 22 F.R.D. 182, 184 (D.Ky.1958).

Dresser's breach of express warranty affects not only the lessor's estate or interest in the tower but also the plaintiffs' right of estate in the tower as lessees. Separate causes of action arise for the injuries to the different interests and estates of Community and its lessees in the tower. This situation is different from one in which a single act causes different injuries, such as to a person and his property, wherein a single cause of action inheres in the wrongful act and not the various forms of harm. *SoDak Distributing Co. v. Wayne,* 77 S.D. 496, 93 N.W.2d 791 (1958). In this case, one wrongful act affected different rights in the same property thus establishing separate causes of action for each breach of a legal duty. Midcontinent and Forum have not split their cause of action before this court. To permit the use of claim preclusion in this case would make it possible for Dresser to succeed in defeating plaintiffs' claims without a fair opportunity to place their cause of action in litigation. Accordingly, the defendant's motion for summary judgment is denied.

### Plaintiffs' Motions—Collateral Estoppel.

Under the doctrine of collateral estoppel or issue preclusion urged by the plaintiffs, where a second action is upon a different cause of action, the final judgment in the prior suit "precludes relitigation of issues actually litigated and necessary to the outcome of the first action."

*Parklane Hosiery Co., Inc. v. Shore, supra,* 439 U.S. at 326 f. 5, 99 S.Ct. at 649. Recent developments have expanded the scope of this doctrine. The previous requirements of mutuality, whereby neither party or privities could use prior judgments as an estoppel against the other unless both were bound, was rejected by the United States Supreme Court in *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The offensive use of collateral estoppel without mutuality has been recently approved of in such cases as *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552; *Starker v. United States,* 602 F.2d 1341 (9th Cir. 1979); and *W.J. Roberts & Co., Inc. v. S.S. Hellenic Glory,* 471 F.Supp. 1002 (S.D.N.Y.1979). Offensive use occurs when the "plaintiff seeks to foreclose the defendant from relitigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery, Inc. v. Shore, supra,* 439 U.S. at 326 f. 4, 99 S.Ct. at 649. Defensive use is present when "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Id.*

The court in *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir. 1979), relying on *Gerrard v. Larsen,* 517 F.2d 1127, 1130 (8th Cir. 1975), found defensive use of collateral estoppel appropriate where:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

All four of the above elements are met by the plaintiffs' motion. The issue in the present actions of whether Dresser breached its express warranty is identical to the issue of liability in the prior litigation by Community. The judgment on the merits in *Community Television Service, Inc. v. Dresser Industries, Inc.,* is final. The de-

fendant in the pending actions is the same defendant as in the prior litigation. And, as witnessed by this court in the first trial, Dresser had a full and fair opportunity to litigate the issue of liability.

However, in this case, where collateral estoppel is sought offensively, to foreclose Dresser from relitigating the issue of liability, additional considerations are necessary. In *Parklane Hosiery Co., Inc. v. Shore*, the use of offensive collateral estoppel was discouraged where it "would be unfair to a defendant" or where "a plaintiff could easily have joined in the earlier action." 439 U.S. at 331, 99 S.Ct. at 651.

 The fairness aspects of *Parklane* do not prevent the use of offensive collateral estoppel in this case. Dresser vigorously and aptly litigated all issues in the prior action. Dresser was aware at that time that other actions would be likely to follow and could have sought joinder of the potential plaintiffs. No procedural advantages are presented in the present actions that would alter the determination of liability in a new trial. Nor is the judgment relied upon by the plaintiff for collateral estoppel inconsistent with other judgments. This court finds nothing for the defendant to gain from a new trial on the issue of liability.

The second aspect of *Parklane*'s "general test", however, does raise concern for it is technically true that Midcontinent and Forum, as well as other lessees not party to this motion, could have joined the prior litigation as permissive parties under Rule 20 of the Federal Rules of Civil Procedure. Although this court cannot determine precisely why the plaintiffs did not join in the first action, it appears that their primary reason was their inability to ascertain damages until months after the first trial, and not to elude the initial resolution of liability.[2] Thus we exercise our discretion in favor of plaintiffs and hold that Dresser

can be estopped from relitigating the issue of liability.

Accordingly, the plaintiffs' motions for partial summary judgment as to the issue of Dresser's liability is granted. The determination of the damages due the plaintiffs is the only remaining issue to be tried. Counsel for the plaintiffs are directed to draft an order in accordance with this opinion.

---

2. The defendant Dresser could have sought joinder of the plaintiffs which at the time of the first action it knew were likely to file suit. The argument that plaintiffs should not be permitted to adopt a "wait and see" attitude contra to

judicial economy was found equally applicable to defendants who knew the existence of other cases in *W.J. Roberts & Co., Inc. v. S.S. Hellenic Glory*, 471 F.Supp. 1002 (S.D.N.Y.1979).