**NELSON & ROBERTSON PTY. LTD., of AUCKLAND, NEW ZEALAND and SYDNEY, AUSTRALIA, Plaintiff,**

**v.**

**K.M.S.T., INC., an American Samoa Corporation, and J.J. YONG, a/k/a JUM-YONG JUNG, a/k/a MR. CHUNG, Defendants.**

High Court of American Samoa
Trial Division

CA No. 106-88

August 28, 1997

Before KRUSE, Chief Justice, and TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiff, Jennifer L. Joneson
For Defendants, Marshall L. Ashley and Malaetasi M. Togafau

## ORDER GRANTING MOTION FOR WRIT OF EXECUTION

### Introduction

On July 14, 1997, Plaintiff Nelson & Robertson Pty, Ltd., ("N&R") filed an application for a writ of execution against "J.J. Yong a/k/a Jum-Yong Jung, a/k/a Mr. Chung *and Malaeimi Valley Mart"* for satisfaction of a $502,379.27 judgment entered against defendant J.J. Yong ("Yong") and co-defendants on April 10, 1991. (Emphasis added). N&R's application for a writ of execution relied on *G.H.C. Reid and Co., Inc. v. K.M.S.T.,* 1 A.S.R.3d 82, 86 (Trial Div. 1997), in which the court judicially declared "that Yong constructively possesses a 100% interest in [Malaeimi Valley Mart], and that [Malaeimi Valley Mart]'s assets are therefore subject to Reid's judgment lien."

On July 15, 1997, this court summarily denied the application in part because N&R had not sufficiently demonstrated why this court should include "Malaeimi Valley Mart" in a writ of execution on the April 10, 1991, judgment.

121

On August 8, 1997, the court conducted a hearing on the application of the doctrines of *res judicata* and collateral estoppel to ·the present controversy. On the morning of August 8, 1997, N&R filed their written brief in the matter. Because Yong's counsel had an inadequate opportunity to review N&R's written brief, the hearing was continued until August 12, 1997. After the hearing, the court ordered the parties to file supplementary briefs.

## Discussion

After reviewing the briefs submitted, we conclude that N&R may obtain a writ of execution against the assets of Malaeimi Valley Mart.

### I. The Doctrine of Collateral Estoppel

■ Under the judicially-developed doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158, 78 L. Ed. 2d 379, 383 (1984) (citing *Montana v. United States*, 440 U.S. 147, 153, 59 L. Ed. 2d 210 (1979)); *Puailoa v. Estate of Lagafuaina*, 11 A.S.R.2d 54, 76 (Land & Titles Div. 1989). Collateral estoppel, like the related doctrine of *res judicata*, relieves "parties of the cost and vexation of multiple lawsuits," conserve[s] judicial resources, and encourages reliance on adjudication by preventing inconsistent decisions." *Mendoza*, 464 U.S. at 158, 78 L. Ed. 2d at 383-84 (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411 (1980)); *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 974 (1979). However, the doctrines are distinct in that *res judicata* applies only between parties and their privies to the prior action, while collateral estoppel may be invoked by a stranger to the prior action against a party to that action. *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Stranger plaintiffs may, under certain circumstances, use the doctrine of collateral estoppel "offensively," to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S. Ct. 645, 650 (1979).

■ A trial court has broad discretion in determining when offensive collateral estoppel is appropriate, *id.*, 439 U.S. at 331, 99 S. Ct. at 651, and must consider the following factors: (1) whether the new plaintiff could have easily joined the previous action; (2) whether the defendant had sufficient incentive in the earlier action to litigate the matter with vigor; (3) whether the application of collateral estoppel would be unfair to the defendant for other reasons; (4) whether the issues in the two actions are identical; (5) whether the court's holding in the earlier action

122

was actually litigated and necessary to a determination on the merits; (6) whether the judgment in the earlier action was final.

## A. Failure to Join Earlier Action

The court must consider whether judicial economy is truly served by the offensive use of collateral estoppel under the circumstances of the case. The offensive use of collateral estoppel can actually increase rather than decrease the total amount of litigation by encouraging potential plaintiffs to adopt a "wait and see" attitude towards similar pending actions. Thus, if a particular plaintiff "could easily have joined in the earlier action," a trial judge should not allow the use of offensive collateral estoppel. *Id.,* 439 U.S. at 331, 99 S. Ct. at 652; RESTATEMENT (SECOND) OF JUDGMENTS § 29(4).

The Supreme Court did not define the type or degree of ease which is relevant or necessary. *Starker v. United States,* 602 F.2d 1341, 1349-50 (9th Cir. 1979); *Collins v. Seaboard Coastline Railroad Co.,* 516 F. Supp. 31, 33 (S.D. Ga. 1981); 18 C. Wright, A. Miller, E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4465, at 59 (West 1980 and 1994 Supp.) (stating that "[i]t is far from clear whether this test will be administered strictly"). Furthermore, the Supreme Court failed to identify whether the moving party in a collateral estoppel action bears the burden of proving that joinder was not "easy," or whether the defendant has the burden of demonstrating that joinder was, indeed, easy. Neither N&R nor Yong have briefed the court on the issue of burden of proof.

The weight of the authority, however, seems to be in favor of the proposition that the application of collateral estoppel will not be denied due to failure to join unless the defendant can produce evidence that the plaintiff was motivated by a "wait and see" attitude. *See Blonder-Tongue Labs. v. Univ. of Illinois Foundation,* 402 U.S. 313, 333, 28 L. Ed. 2d 788, 802 (1971) (quoting *Eisel v. Columbia Packing,* 181 F. Supp. 298, 301 (D. Mass. 1960) (asserting that the party who lost the prior action "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'"); *Carter-Wallace, Inc. v. United States,* 496 F.2d 535, 539 (Ct. Cl. 1974) ("It is significant that the Court [in *Blonder-Tongue*] placed the burden on the plaintiff-patentee to show that he did not have a full and fair opportunity to litigate."); *Ross-Berger Cos. v. Equitable Life Assur. Socy.,* 872 F.2d 1331, 1337-38 & n.2 (7th Cir. 1989) ("Where a plaintiff has not needlessly increased the total amount of litigation by adopting a 'wait and see' attitude, the concern for judicial economy animating the *Parklane Hosiery* 'easy joinder' limitation has not been implicated."); *Nations v. Sun Oil Co.,* 695 F.2d 933, 938 (5th Cir. 1983), *cert. denied,* 464 U.S. 893, 78 L. Ed. 2d 229 (1983) (holding

that where there was "no proof of purposeful delay" and where a delay is "not shown to be fundamentally unfair" a defendant has no right to a second bite at the apple); *Starker*, 602 F.2d at 1349-50; *McLendon v. Continental Group, Inc.*, 660 F. Supp. 1553, 1564 (D.N.J. 1987); *Midcontinent Broadcasting Co. v. Dresser Indus.*, 486 F. Supp. 858, 862 (D.S.D. 1980); *Collins*, 516 F. Supp. at 33 (refusing to "speculate why plaintiff declined to join her husband's suit, [but nevertheless stating that it was] clear that her purpose was not to elude the binding force of an adverse judgment."); RESTATEMENT (SECOND) OF JUDGMENTS § 29, cmt. e, Reporter's Note (suggesting that a claimant who simply "stayed out of" a prior action between others may ordinarily invoke preclusion). This authority convinces us that, in the case at hand, Yong possesses at minimum a burden of producing some evidence indicating that N&R was a "sideline sitter[] while others carried the ball." *Carr v. District of Columbia*, 646 F.2d 599, 606 (D.C. Cir. 1980).[1]

■ In the present case, Yong has merely submitted, without any evidentiary support, that the present case "is an excellent example of [a plaintiff "waiting and seeing" whether another plaintiff would receive a favorable ruling, and then "jumping on the bandwagon"]." Defendant's Memorandum in Opposition to Application for Writ of Execution, at 4. Yong has presented no direct or circumstantial evidence supporting the proposition that N&R adopted a "wait and see" attitude so as to avoid the binding force of a potentially adverse ruling in CA No. 78-89.[2] Since we adopt for this jurisdiction a rule that the party opposing collateral

---

[1] *Cf. Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir. 1985), (finding no clear error in the decision of a trial court to deny the application of collateral estoppel because plaintiff had "failed to present a valid reason" for not joining the earlier action); *Aiello v. City of Wilmington*, 470 F. Supp. 414, 422 n.21 (D. Del. 1979) (opining that the Supreme Court's decision in *Parklane Hosiery* had "put a slightly higher burden on the proponent of collateral estoppel when it is used offensively."); *Mancuso v. Harris*, 677 F.2d 206, 209 (2d Cir. 1982) (cautioning courts to use "care" before applying the doctrine of collateral estoppel); *Evanston Ins. Co. v. Affiliated FM Ins. Co.*, 556 F. Supp. 135, 137 (D. Conn. 1983) (remarking that "[w]hile *Parklane Hosiery* did authorize the use of collateral estoppel offensively, it did so under certain *strict* guidelines.") (emphasis added).

[2] The absence of any evidence that N&R's conduct created unnecessary litigation distinguishes the instant case from *Hauser*, where the district court had relied on the absence of a valid reason for failing to join, but also on circumstantial evidence of the plaintiff's knowledge of the earlier suit, including: (1) the fact that plaintiff was married to the previous plaintiff; (2) the fact that plaintiff was represented by counsel during the pendency of her husband's litigation and counsel at that time knew of the potential for the wife's cause of action. 761 F.2d at 207 n.2.

estoppel has the burden of proving that the proponent was sandbagging, even where the plaintiff has not adequately explained the failure to join,[3] we conclude that Yong's conclusory statement is insufficient to deny the application of collateral estoppel on the ground that N&R failed to join in CA No. 78-89.

## B. Incentive to Litigate

In *Parklane Hosiery*, the Supreme Court also expressed concern about potential unfairness to defendants where the defendant had little incentive to defend the first action "vigorously." 439 U.S. at 330, 99 S. Ct. at 651. In the instant case, Yong has argued that the court should consider the fact that judgment in CA No. 78-89 was for "only" $60,000, whereas judgment in the instant case is potentially over $500,000.

■ However, $60,000 is a high enough stake to elicit vigorous litigation. *See Starker*, 602 F.2d at 1349 ("The government had plenty of incentive to litigate *Starker I*, in which a $37,342 refund was at stake."). *Cf. Berner v. British Commonwealth Pac. Airlines,* 346 F.2d 532, 540-41 (2d Cir. 1965). Furthermore, where future suits are foreseeable at the time of the first action, the defendant can not claim that there was a lack of incentive to litigate the issue. *Parklane Hosiery*, 439 U.S. at 330, 99 S. Ct. at 651; *Johnson v. United States*, 576 F.2d 606, 615 (5th Cir. 1978) ("One of the most important considerations is whether, at the time of the earlier action, the party could foresee that facts subject to estoppel could be important to future litigation."). In the instant case, Yong knew at the time of CA No. 78-89 that N&R and other entities possessed unsatisfied judgments against him, and that an adverse judgment in CA No. 78-89 might enable these entities to assert in court the same claims that G.H.C. Reid posited. Therefore, the circumstances of this case suggest that Yong had an adequate incentive to litigate vigorously the issue of his ownership of Malaeimi Valley Mart.

---

[3] N&R has not presented evidence to explain precisely how and when N&R learned of Yong's involvement in Malaeimi Valley Mart. N&R merely presents the affidavit of its counsel, Jennifer Joneson, who averred under oath that N&R contacted her law office at a juncture where "the post-judgment trial in the G.H.C. Reid v. K.M.S.T., et. al. HCCA 78-89 had already been completed and was under advisement with the court." Because this statement does not necessarily mean that N&R did not *know* of G.H.C. Reid's case during the period when CA No. 78-89 was being litigated, nor does the statement necessarily mean that N&R did not know of Yong's involvement with Malaeimi Valley Mart at some point prior to the conclusion of trial, the remark has minimal value with respect to the issue of whether N&R could have easily joined in the action. *Cf. Flatt v. Johns Manville Sales Corp.*, 488 F. Supp. 836, 840 (E.D. Tex. 1980).

## C. Fairness to Defendant

The Supreme Court cautioned courts against the application of collateral estoppel where such action "would be unfair to a defendant." *Parklane Hosiery,* 439 U.S. at 331, 99 S. Ct. at 652. Where a party lacked full and fair opportunity to litigate the issue in the first action, the application of offensive collateral estoppel against that party is inappropriate. *Amisone v. Talaeai,* 23 A.S.R.2d 52, 54 (Trial Div. 1992); *Montana v. United States,* 440 U.S. at 153, 99 S. Ct. at 973; *Speaker Sortation Systems v. U.S. Postal Service,* 568 F.2d 46, 48 (7th Cir. 1978); RESTATEMENT (SECOND) OF JUDGMENTS § 29.

In the instant case, Yong alleges that the court in CA No. 78-89 did not grant relief that was contemplated in Reid's pleading, and that the court's judgment was not supported by the evidence presented. We have reviewed the record in CA No. 78-89 and find no reason to "doubt the quality, extensiveness, or fairness of procedures followed in [the] prior litigation." *Montana v. United States,* 440 U.S. at 164 & n.11, 99 S. Ct. at 979 & n.11. The trial court in CA No. 78-89 liberally construed the plaintiff's pleadings, as it must in this "notice pleading" jurisdiction. T.C.R.C.P. 8(e)(1), 8(f); *Morgan v. American Samoa Gov't,* 24 A.S.R.2d 164, 165 (Trial Div. 1993). The fact that Yong was overconfident in his theory of the case and did not effectively counter the plaintiff's evidence does not mean that Yong had no *opportunity* to litigate the issues of fraudulent conduct and equitable ownership in the first action.[4] Thus, we reject Yong's allegation that issue preclusion would be unfair to him because of inadequacies in the previous litigation.[5]

---

[4] *See G.H.C. Reid & Co. v. K.M.S.T.,* 1 A.S.R.3d 105, 110 (Trial Div. 1997) (Order on Motion for Reconsideration) (". . . Defendants and Defendant-Garnishees were content to rest on their characterization of the issues and to offer only minimal effort at rebutting Reid's evidence.")

[5] However, one commentator has questioned the intensity of scrutiny due an earlier trial:

> Issue preclusion is available in most circumstances without any need to prove the quality of the first litigation and decision. The values of preclusion would be destroyed if proof of the quality of decision were required of the party asserting preclusion or permitted to the party opposing it. Trial of the quality of the first litigation would often prove more demanding than simple retrial of the issues themselves. Deliberate harassment would be facilitated accordingly. And the opportunity to try this question would undermine any ability to rely on the finality of the first determination. . . . The current trend is to allow preclusion unless the first court followed severely limited procedures or there is a clear and

126

D. Identity of Issues

■ Issue preclusion only applies when the issue raised is the same issue that was decided in an earlier case. *Reid v. Puailoa*, 23 A.S.R.2d 101, 112 (Land & Titles Div. 1993); *Montana v. United States*, 440 U.S. at 153, 99 S. Ct. at 973; RESTATEMENT (SECOND) OF JUDGMENTS, § 27(1); 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 4416, at 148. For example, in *Speaker Sortation Systems v. U.S. Postal Service*, 568 F.2d 46 (7th Cir. 1978), the Seventh Circuit held that a determination that the defendant retained a "fund" that was subject to recovery on an equitable lien theory was suitable for issue preclusion, whether the issue be characterized as one of law, fact, or both fact and law. *Id.* at 49. The court found that the later claim stemmed from the same controversy and that there was nothing to be gained from repeated litigation. *Id.*

The court in CA No. 78-89 essentially determined that Yong had engaged in fraudulent and inequitable conduct, that Yong "possessed" an equitable interest in Malaeimi Valley Mart, and that this asset could be subject to an equitable lien. N&R is in exactly the same position as G.H.C. Reid was in CA No. 78-89. Nothing in N&R's claim depends on characteristics or conduct attributable to N&R, or the particular relationship between N&R and Yong. The distinction that Yong proposes, that CA No. 78-89 dealt only with "constructive possession" for the purposes of satisfying a judgment and that the current issue is over "legal ownership" for the purposes of satisfying a judgment, is merely an exercise in semantics. We therefore hold that for the purposes of issue preclusion the instant case deals with the same issue of which the court in CA No. 78-89 disposed.

E. Essential and Necessary to Prior Determination

■ The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in the prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1213

---

strong policy requiring independent redetermination by the second court.
18 C. Wright, A. Miller, E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4423, at 216, 217 (West 1980 & 1994 Supp.). While we tend to agree with this reasoning, the facts of the instant case are such that we need not strictly prohibit subsequent evaluations of trial "quality" in order to reach our conclusion today regarding the "fairness" to the defendant of applying the doctrine of collateral estoppel to the trial court's conclusions in CA No. 78-89.

(S.D.N.Y. 1981). In CA No. 78-89, the court stated that equity required the court to fashion a "new" remedy, and to declare that Yong "constructively possesse[d]" Malaeimi Valley Mart. The court's holding was based on substantial circumstantial evidence that was presented at trial regarding Yong's fraudulent and inequitable conduct, and directly responded to the plaintiff's request for a determination that the store's "money [and] property" was Yong's property for the purposes of satisfying the plaintiff's judgment. *See G.H.C. Reid & Co. v. K.M.S.T.*, 1 A.S.R.3d 106, 107 (Trial Div. 1997) (Order on Motion for Reconsideration). Thus, we have no trouble concluding that the issue of Yong's equitable ownership of Malaeimi Valley Mart was actually litigated and necessary to the resolution of CA No. 78-89.

## F. Finality of Judgment

■ Issue preclusion only applies to "final" judgments on the merits. *John Morrell & Co. v. Local 304A United Food & Comm. Workers*, 913 F.2d 544, 562 n.16 (8th Cir. 1990), *cert. denied*, 500 U.S. 905, 114 L. Ed. 2d 78. In the United States federal courts, for purposes of issue preclusion, final judgment includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." RESTATEMENT (SECOND) OF JUDGMENTS § 13. The fact that the losing party in the earlier case may still appeal the ruling to a higher appellate court does not render the judgment non-final. *Deposit Bank v. Frankfort*, 191 U.S. 499 (1903); *Kurek v. Pleasure Driveway & Park Dist.*, 557 F.2d 580, 595 (1977); *cert. denied*, 439 U.S. 1090, 99 S. Ct. 873 (1977); *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993); *Erebia v. Chrysler Plastics Products Corp.*, 891 F.2d 1212, 1215 n.1 (6th Cir. 1989); *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980); *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969); *McLendon*, 660 F. Supp. at 1562; 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 4433, at 308 (stating that the "established rule" in the federal courts is that a final judgment retains all of its preclusive effect pending appeal). Yong has presented no persuasive reason for rejecting this rule in American Samoa,[6] and we decline to deviate from federal precedent on this issue. Accordingly, we hold that the judgment in CA No. 78-89, which has survived a motion for reconsideration, is final for the purposes of issue preclusion.

---

[6] In *Warwick Corp. v. Maryland Dept. Of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983), the court held that denying preclusion because the earlier judgment was on appeal would "be laughable. If a judgment was denied its *res judicata* effect merely because an appeal was pending, litigants would be able to refile an identical case in another trial court while the appeal is pending, which would hog-tie the trial courts with duplicative litigation.")

128

### Conclusion and Order

The doctrine of collateral estoppel applies to the holding of the trial court in CA No. 78-89 that Defendant J.J. Yong possesses Malaeimi Valley Mart. Yong may not relitigate the issue of his ownership of Malaeimi Valley Mart in this action by Nelson & Robertson. Accordingly, the application for a writ of execution to satisfy Nelson & Robertson's heretofore unsatisfied judgment against Yong by seizing the assets of Malaeimi Valley Mart is GRANTED.

It is so Ordered.